ACTING SUPERINTENDENT OF BOURNEWOOD HOSPITAL *vs.*
LYNDA BAKER.

Norfolk. February 10, 2000. - March 22, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Practice, Civil,* Moot case, Commitment of mentally ill person. *Moot Question. Mental Health. Statute,* Construction. *District Court,* Jurisdiction.

This court undertook to decide an issue that was moot, in circumstances in
which the issue, involving the commitment and treatment of mentally ill
persons, was one of public importance and likely to arise again, and appel-
late review could not be obtained before the issue would again be moot.
[103]
The superintendent of a facility for the care and treatment of mentally ill
persons was without authority to petition for the civil commitment under
G. L. c. 123, §§ 7 and 8, of a conditional voluntary patient at the facility
who had not given written notice pursuant to G. L. c. 123, § 11, of intent
to leave or withdraw from the facility, and a District Court judge was
without jurisdiction to hear the commitment petition. [103-105]
Where there was no valid order committing a person to a facility for the care
and treatment of mentally ill persons, a concomitant order pursuant to
G. L. c. 123, § 8B, authorizing the treatment of the person with antipsy-
chotic medications was invalid under the clear terms of § 8B (*b*). [105-107]

PETITIONS filed in the Brookline Division of the District Court
Department on September 3, 1998.

A motion to dismiss was heard by *Herbert N. Goodwin,* J.,
and the cases were heard by him.

The Supreme Judicial Court granted an application for direct
appellate review.

*Robert D. Fleischner* (*Leigh Mello* with him) for the
defendant.

*Thomas H. Martin* for the plaintiff.

The following submitted briefs for amici curiae:

*Jennifer Honig & Frank Laski* for Mental Health Legal Advi-
sors Committee.

*Lester D. Blumberg* for Department of Mental Health.

*James T. Hilliard & Jason R. Talerman* for The Massachusetts Psychiatric Society, Inc., & another.

SPINA, J. Lynda Baker appeals from the order for her civil commitment to Bournewood Hospital (hospital)[1] pursuant to G. L. c. 123, §§ 7 and 8, and the order authorizing her treatment with antipsychotic medications pursuant to G. L. c. 123, § 8B. Her main argument is that the District Court judge erred by denying her motion to dismiss, in which she claimed that the acting superintendent of the hospital lacked authority to petition for her commitment and that the District Court lacked jurisdiction over the subject matter of the petitions because Baker was a "conditional voluntary"[2] patient of the hospital at all relevant times, and had not given notice of her intention to leave the hospital pursuant to G. L. c. 123, § 11. Baker appealed to the Appellate Division of the District Court Department, where a divided panel dismissed her appeal. Baker then claimed an appeal to the Appeals Court. We granted her application for direct appellate review. We reverse.

The parties prepared an agreed statement of the case in accordance with Dist./Mun. Cts. Appellate Division Appeal Rule 8B (1999), which we summarize. Baker was admitted to the hospital on August 29, 1998, for a period of ten days, pursuant to G. L. c. 123, § 12. During the ten-day period, she applied for care and treatment on a conditional voluntary basis, pursuant to G. L. c. 123, §§ 10, 11. The superintendent accepted Baker's application and she became a conditional voluntary patient. During treatment she accepted some medication, but refused to take antipsychotic medications that were offered. On September 2, 1998, the acting superintendent filed a petition in the Brookline Division of the District Court Department for Baker's civil commitment, pursuant to G. L. c. 123, §§ 7 and 8, followed the next day[3] by a petition under G. L. c. 123, § 8B, to authorize treatment with antipsychotic medication. Baker filed a motion to dismiss both petitions for lack of jurisdiction, based on her status as a conditional voluntary patient. Her motion was

---

[1] It is not disputed that the hospital is a "facility" within the meaning of G. L. c. 123, § 1.

[2] A conditional voluntary patient is one accepted by the superintendent on a voluntary basis, with the proviso that the patient must give three days' notice in writing before leaving or withdrawing from the facility. See G. L. c. 123, §§ 10, 11.

[3] However, the dockets indicate that both petitions were filed on September 3, 1998.

opposed by the superintendent and, on September 18, 1998, the motion was denied. Following hearings on the two petitions, the judge made findings of fact, ordered that Baker be committed to the hospital for six months, and ordered that she be treated with antipsychotic medications. Baker filed a motion for a stay of the orders pending appeal. That motion was denied.

1. *Mootness.* The parties report that during the appellate proceedings Baker has been released and is living in a supervised setting in the community. Accordingly, the case is now moot. The parties request that we decide the issue presented notwithstanding that the case has become moot. The acting superintendent advises that the procedures followed here are "repeated with regularity," and that mental health professionals need to know with a reasonable degree of certainty that they are proceeding lawfully in such cases. "Litigation ordinarily is considered moot when the party claiming to be aggrieved ceases to have a personal stake in its outcome. . . . Nonetheless, it is within our discretion to decide an issue which is [moot], where the question is one of public importance, is very likely to arise again in similar circumstances, and where appellate review could not be obtained before the question would again be moot." (Citations omitted.) *Attorney Gen.* v. *Commissioner of Ins.*, 403 Mass. 370, 380 (1988). Issues involving the commitment and treatment of mentally ill persons are generally considered matters of public importance. See *Guardianship of Weedon*, 409 Mass. 196, 197 (1991); *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983). "[I]ssues which involve the rights of the mentally ill are classic examples of issues that are 'capable of repetition, yet evading review.' " *Guardianship of Doe*, 391 Mass. 614, 618 (1984), quoting *Hashimi* v. *Kalil, supra.* In these circumstances, where appellate review is likely to occur after the expiration of an order of commitment, we shall exercise our discretion and decide the issue.

2. *The order of commitment.* Baker argues that the superintendent had no authority to petition for her commitment under G. L. c. 123, §§ 7 and 8, because she was a conditional voluntary patient at the hospital and had not given notice of her intention to leave. She contends that the statute authorizes the superintendent to petition for the commitment of a conditional voluntary patient only if the patient has given a three-day written notice pursuant to G. L. c. 123, § 11, of her intention to leave or withdraw from the facility.

Section 7 (*a*) of G. L. c. 123 states that:

"The superintendent of a facility may petition the district court . . . for the commitment to said facility and retention of any patient at said facility whom said superintendent determines that the *failure to hospitalize* would create a likelihood of serious harm by reason of mental illness" (emphasis added).

Section 8 (*a*) of G. L. c. 123 states:

"After a hearing . . . the district court . . . shall not order the commitment of a person at a facility or shall not renew such order unless . . . *the discharge* of such person from a facility would create a likelihood of serious harm" (emphasis added).

Section 11 of G. L. c. 123, describing conditional voluntary patients, states that:

"[P]ersons . . . [required] to give three days written notice of their intention to leave or withdraw . . . may be retained at the facility beyond the expiration of the three day notice period if, *prior to the expiration of the said three day notice period, the superintendent files with the district court a petition for the commitment of such person at the said facility*" (emphasis added).

As a general rule, a statute must be construed "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). "At the same time, a statute should be read as a whole to produce an internal consistency." *Telesetsky* v. *Wight*, 395 Mass. 868, 873 (1985). "[W]here the language of the statute is plain and unambiguous . . . legislative history is not ordinarily a proper source of construction." *Hashimi* v. *Kalil*, *supra* at 609, quoting *Hoffman* v. *Howmedica, Inc.*, 373 Mass.

32, 37 (1977). Applying these rules of construction, it is apparent that the superintendent was without authority to petition for Baker's commitment, and that the District Court judge was without jurisdiction to hear the commitment petition.

Sections 7 (*a*), 8 (*a*), and 11 must be read together when reviewing an order for commitment of a conditional voluntary patient. Section 11 contemplates the filing of a petition to commit such a patient *after* the patient gives notice of an intention to leave or withdraw. Section 7, while referring to a "failure to hospitalize," must be read in conjunction with § 8, which requires a finding that a "*discharge*" of the patient "would create a likelihood of serious harm" (emphasis added). An element of proof in such cases is the imminency of discharge of the patient from the facility, something which cannot arise in the case of a conditional voluntary patient absent notice of intent to leave.

When hospitalization becomes an involuntary matter at the initiative of government, the result is "a massive curtailment of liberty" which requires a showing of "imminent danger of harm." *Commonwealth* v. *Nassar*, 380 Mass. 908, 917 (1980), quoting *Lessard* v. *Schmidt*, 349 F. Supp. 1078, 1093 (E.D. Wis. 1972) (three-judge court), vacated and remanded on other grounds, 414 U.S. 473 (1974). The aspect of immediacy of harm arises from the imminency of discharge as well as from the mental illness. As the dissent to the Appellate Division's opinion noted, "[§ 7 (*a*)] clearly requires [proof of] a threat of harm from 'the failure to hospitalize.' " Section 11 speaks to this by requiring the conditional voluntary patient to give advance notice of an intention to leave or withdraw. Absent such notice, there is no discharge as would create a likelihood of serious harm. The conditional voluntary patient is not a risk of imminent danger because she is not free to leave the hospital without first giving a three-day notice of an intent to leave.

The acting superintendent's claim that the statute gives him the authority to seek commitment of any patient at any time without having to prove the likelihood of serious harm on "*discharge*" would render that word in the statute superfluous, a result that is disfavored. See *Bynes* v. *School Comm. of Boston*, 411 Mass. 264, 267-268 (1991), and cases cited. Further the acting superintendent's reading of the statute would permit him to file a petition simply by presupposing a patient's discharge, thereby eliminating any requirement of an actual controversy,

see *Caputo* v. *Board of Appeals of Somerville*, 330 Mass. 107, 111 (1953), and catapulting commitment proceedings into the hypothetical sphere.

3. *The order for treatment with antipsychotic medication.* Baker contends that the order for her treatment with antipsychotic medications is invalid because it is predicated on an invalid commitment order. We agree. General Laws c. 123, § 8B (*a*), authorizes the superintendent of a facility to file a petition for treatment of a patient with antipsychotic medications. Section 8B (*b*), however, expressly provides that such a petition "shall not be heard or otherwise considered by the court unless the court has first issued an order of commitment on the pending petition for commitment." The directive of § 8B (*b*) is clear.

The acting superintendent argues that it is unlikely that the Legislature intended to make § 8B inapplicable to the entire class of patients like Baker who elect conditional voluntary status under § 12 (*c*), but then refuse medications. The plain and unambiguous language of § 8B suggests otherwise. The District Court judge is empowered to order treatment of a patient with antipsychotic medications pursuant to § 8B, but only if the patient first has been involuntarily committed. The acting superintendent also misstates the circumstances in which Baker came to be a conditional voluntary patient. She did not elect that status, but applied for it. The acting superintendent, or those authorized by him, accepted Baker's application. See G. L. c. 123, § 12 (*c*); 104 Code Mass. Regs. § 27.06 (1) (c) (1998). Further, Baker did not refuse to take all medications; she refused to take antipsychotic medications, as was her right absent appropriate court intervention. See *Rogers* v. *Commissioner of the Dep't of Mental Health*, 390 Mass. 489, 491 (1983); 104 Code Mass. Regs. § 27.10 (1) (b) (1998).

The acting superintendent took no action to terminate Baker's status as a conditional voluntary patient. He was bound, therefore, to work within the framework of rights afforded a patient of that status. If he were of the opinion that, as a conditional voluntary patient, Baker required treatment with antipsychotic medications and was not competent to make informed decisions about such treatment, a comparable proceeding was available through the Probate and Family Court Department pursuant to G. L. c. 201, § 6. See *Rogers* v. *Commissioner of the Dep't of Mental Health*, *supra*. While the requirements

for obtaining an order of substituted judgment under G. L. c. 123, § 8B, are similar in most respects to one under G. L. c. 201, § 6, the former requires, as a condition precedent to the petition, an order of commitment under G. L. c. 123, § 8. The petition under §§ 7 and 8, as discussed, *supra*, may not be maintained against a conditional voluntary patient who has not given the three-day notice under § 11. The acting superintendent acknowledges that he pursued the matter in the District Court essentially as a matter of convenience. That decision, which resulted in a needless and "massive curtailment of [Baker's] liberty," *Commonwealth* v. *Nassar*, *supra*, cannot be justified in the name of administrative expedience, much less as a matter of statutory interpretation.

We do not reach Baker's constitutional claims, having decided the case under principles of statutory interpretation.

The orders of the District Court are vacated.

*So ordered.*