NEWTON-WELLESLEY HOSPITAL *vs.* ROBERT MAGRINI.

Middlesex. May 6, 2008. - July 10, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Mental Health. Practice, Civil,* Commitment of mentally ill person, Moot case. *Moot Question.*

Discussion of G. L. c. 123, § 12, pertaining to the emergency restraint and temporary involuntary civil commitment of persons with mental illness, and the protections afforded to persons temporarily committed. [778-781]

This court exercised its discretion to address the merits of an appeal that was moot, where the appeal presented issues involving the commitment and treatment of mentally ill persons, which are generally considered matters of public importance, and where the appeal presented a classic example of issues that were capable of repetition yet evading review. [782-783]

A District Court judge erred in denying a respondent's request for an emergency hearing pursuant to G. L. c. 123, § 12 (*b*), in connection with a hospital's petition for his temporary involuntary commitment as a person with mental illness, where the request unquestionably demonstrated a misuse or abuse warranting an emergency hearing, i.e., the hospital's effectuation of a second commitment to render an order directing the respondent's discharge from an earlier commitment illusory, and where the obligation to hold the emergency hearing was therefore mandatory. [783-785]

PETITION filed in the Newton Division of the District Court Department on June 15, 2006.

A request for an emergency hearing was considered by *Dyanne J. Klein,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Robert D. Fleischner* (*J. Paterson Rae* with him) for the respondent.

*Michael T. Porter* for Newton-Wellesley Hospital.

*Beth L. Eisenberg & Stan Goldman,* Committee for Public Counsel Services, *& Jennifer Honig, William Landers, Frank Laski, & Karen Owen Talley,* for Mental Health Legal Advisors Committee & others, amici curiae, submitted a brief.

IRELAND, J. This appeal involves the scope of the statutory right to an emergency hearing afforded under G. L. c. 123, § 12 (*b*), in connection with the temporary involuntary commitment of a person with mental illness. Robert Magrini, who has a schizoaffective disorder, was involuntarily restrained and temporarily committed, pursuant to G. L. c. 123, § 12 (*a*) and (*b*), to a psychiatric unit of Newton-Wellesley Hospital (hospital) despite an order discharging him from that unit. Magrini previously had been restrained and temporarily committed to a psychiatric unit of the hospital, and had obtained a court order directing his discharge because the hospital did not, with respect to his initial temporary commitment, timely file a petition for his continued involuntary commitment pursuant to G. L. c. 123, §§ 7 and 8. Faced essentially with a recommitment and continued restraint on his liberty, Magrini requested an emergency hearing under G. L. c. 123, § 12 (*b*). The request was denied by a District Court judge. Pursuant to G. L. c. 123, § 9 (*a*),[1] Magrini appealed to the Appellate Division of the District Court Department (Appellate Division), where a divided panel entered a decision and order dismissing his appeal. We granted Magrini's application for direct appellate review. We vacate the orders of the District Court.

1. *Statutory overview.* General Laws c. 123 pertains, as is relevant here, to the involuntary civil commitment of persons with mental illness. Section 12 of G. L. c. 123 addresses the emergency restraint and temporary commitment of persons with mental illness. Section § 12 (*a*) provides, in pertinent part, "[a]ny physician who is licensed pursuant to [G. L. c. 112, § 2,] or qualified psychiatric nurse mental health clinical specialist authorized to practice as such under regulations promulgated pursuant to [G. L. c. 112, § 80B,] or a qualified psychologist licensed pursuant to [G. L. c. 112, §§ 118-129], who after examining a person has reason to believe that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness may restrain or authorize the restraint of such person . . . ." Once the person has been restrained, the licensed or

---

[1]General Laws c. 123, § 9 (*a*), provides that "[m]atters of law arising in commitment hearings . . . in a district court may be reviewed by the appellate division of the district courts in the same manner as the civil cases generally."

qualified provider under § 12 (*a*) may "apply for the hospitalization of such person for a three day period at a public facility or at a private facility authorized for such purposes by the department [of mental health]."[2] G. L. c. 123, § 12 (*a*). "An application for hospitalization shall state the reasons for the restraint of such person and any other relevant information which may assist the admitting physician or physicians." *Id.*

Section § 12 (*b*) pertains to hospital admissions. It authorizes a "designated" physician temporarily to commit a person by admitting him "immediately after his reception"[3] to a facility "[i]f the physician determines that failure to hospitalize such person would create[4] a likelihood of serious harm by reason of mental illness . . . ." G. L. c. 123, § 12 (*b*), first par. The statute defines the term "[l]ikelihood of serious harm" as including:

> "(1) a substantial risk of physical harm to the person himself as manifested by evidence of, threats of, or attempts at, suicide or serious bodily harm; (2) a substantial risk of physical harm to other persons as manifested by evidence of homicidal or other violent behavior or evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them; or (3) a very substantial risk of physical impairment or injury to the person himself as manifested by evidence that such person's judgment is so affected that he is unable to protect himself in the community and that reasonable provision for his protection is not available in the community."

*Id.* at § 1.[5]

---

[2]It is not disputed that the hospital is a "facility" under G. L. c. 123, § 1.

[3]If the person has not been examined by a designated physician prior to his reception at the admitting facility, the person "shall receive such examination immediately after reception at such facility. For the purposes of this paragraph, 'immediately' shall mean within two hours and before the person has been classified as a patient or has been assigned to a bed or ward by the admitting staff. In the event that the designated physician on call at the facility is engaged in an emergency situation elsewhere, he or she shall conduct such an examination as soon as such emergency no longer requires his or her attention." 104 Code Mass. Regs. § 27.07(2) (2008).

[4]This determination is quite different from the "reason to believe" standard set forth in G. L. c. 123, § 12 (*a*), required for restraint and application for hospitalization.

[5]The Legislature delegated the task of defining the term "mental illness" to

The commitment authorized under § 12 (*b*) is temporary and may last only three days.[6] *Id.* at § 12 (*d*). By the end of the three days, the statute requires the hospital to (1) discharge the person who had been involuntarily committed; (2) accept the person's application for a conditional voluntary admission[7]; or (3) file a petition for a continued commitment under §§ 7 and 8, which would be valid for a period of either six or twelve months.[8] *Id.* at §§ 7, 8, 12 (*d*).

In 2000, the Legislature amended § 12 (*b*) by adding the second and third paragraphs. See St. 2000, c. 249, § 6. These paragraphs afford certain protections to persons temporarily committed. On a person's admission, the hospital must inform the person that, on the person's request, it will notify the Committee for Public Counsel Services (CPCS) of the name and location of the person. G. L. c. 123, § 12 (*b*), second par. Unless the person waives the right to counsel, or has or desires private counsel, CPCS is then obligated to appoint an attorney for the person. *Id.*

---

the Department of Mental Health (department). See G. L. c. 123, § 2. The term is defined as "a substantial disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality or ability to meet the ordinary demands of life, but shall not include alcoholism or substance abuse." 104 Code Mass. Regs. § 27.05(1) (2006).

[6]"The periods of time prescribed or allowed under [G. L. c. 123, § 12,] shall be computed pursuant to Rule 6 of the Massachusetts Rules of Civil Procedure." G. L. c. 123, § 12 (*e*). As such, the day that the person is admitted is not counted. See Mass. R. Civ. P. 6 (a), 365 Mass. 747 (1974).

[7]A person admitted on conditional voluntary status is "in need of care and treatment," and is accepted by the superintendent, or head of the hospital, on a "voluntary basis." G. L. c. 123, § 10 (*a*). The superintendent, "in his discretion, may require [a conditional voluntary patient] to give three days written notice of [his or her] intention to leave or withdraw." *Id.* at § 11. See *Acting Supt. of Bournewood Hosp.* v. *Baker*, 431 Mass. 101 (2000).

[8]In the case of an initial petition for commitment under G. L. c. 123, §§ 7 and 8, "the hearing shall be commenced within 5 days of the filing of the petition, unless a delay is requested by the person or his counsel. The periods of time prescribed or allowed under [this section] shall be computed pursuant to Rule 6 of the Massachusetts Rules of Civil Procedure." G. L. c. 123, § 7 (*c*). At the hearing, the facility must prove beyond a reasonable doubt that the person is mentally ill and that "the discharge of such person from a facility would create a likelihood of serious harm." *Id.* at § 8 (*a*). See *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 276 (1978). In addition, the facility must demonstrate that no less restrictive alternative to hospitalization is appropriate. *Commonwealth* v. *Nassar*, 380 Mass. 908, 917-918 (1980).

The appointed attorney is required to "meet with the person." *Id.* In addition, the statute provides:

> "Any person admitted under the provisions of this subsection, who has reason to believe that such admission is the result of an abuse or misuse of the provisions of this subsection, may request, or request through counsel an emergency hearing in the district court in whose jurisdiction the facility is located, and unless a delay is requested by the person or through counsel, the district court shall hold such hearing on the day the request is filed with the court or not later than the next business day."

*Id.* at § 12 (*b*), third par.[9]

2. *Background.* Magrini was first temporarily committed to the hospital under G. L. c. 123, § 12 (*b*), on Friday, June 9, 2006.[10] On Thursday, June 15, 2006, the hospital filed a petition, under G. L. c. 123, §§ 7 and 8, for Magrini's continued involuntary commitment for a six-month period. A hearing on the petition was set for Tuesday, June 20, 2006.

On Monday, June 19, Magrini moved to dismiss the petition on the ground that it had not been filed within three business days after his admission, as required by the statute, which would have been on or before Wednesday, June 14. A District Court judge allowed the motion and ordered Magrini discharged.[11]

On Monday, June 19, on receiving the order of discharge, the hospital proceeded to restrain and admit Magrini a second time pursuant to G. L. c. 123, § 12 (*a*) and (*b*). The paperwork on

---

[9]The statutory scheme does not allow recovery by persons involuntarily restrained or committed. G. L. c. 123, § 22 ("Physicians [and other designated medical providers] shall be immune from civil suits for damages for restraining, transporting, applying for the admission of or admitting any person to a facility . . . if the physician [or other designated medical provider] acts pursuant to this chapter").

[10]Magrini arrived at the hospital on the evening of Thursday, June 8, 2006. The examining physician completed the application for a temporary involuntary commitment under G. L. c. 123, § 12 (*a*), at about 10:15 P.M. that evening. A few hours later, at 1 A.M., on Friday, June 9, the examining physician completed and signed the authorization under G. L. c. 123, § 12 (*b*), to admit Magrini.

[11]The hospital points out that, even if it had timely filed its petition, the hearing scheduled for June 20 did fall within the prescribed time frame for hearings on petitions for involuntary commitments pursuant to G. L. c. 123, §§ 7 and 8.

this commitment was signed by the attending psychiatrist,[12] fifteen minutes *before* the attending psychiatrist's note of discharge. During this time, Magrini remained in a locked psychiatric unit. Through his counsel, Magrini filed a request for an emergency hearing pursuant to G. L. c. 123, § 12 (*b*). The request alleged unlawful detention, specifically citing a "misuse of § 12 (*a*) and § 12 (*b*) to effectively countermand a court order [of] discharge." On Tuesday, June 20, the judge who had acted on the plaintiff's motion to dismiss summarily denied Magrini's request. On Wednesday, June 21, Magrini agreed to a conditional voluntary admission pursuant to G. L. c. 123, § 10. On Wednesday, June 28, Magrini filed an appeal from the judge's denial of his request for an emergency hearing.

By a divided panel, the Appellate Division dismissed the appeal. Relying on a memorandum, dated February 23, 2007, and designated Transmittal No. 945, from the Chief Justice of the District Court Department to District Court judges and clerk-magistrates (transmittal 945), the Appellate Division concluded that the judge had discretion to permit an emergency hearing or to decline the request for a hearing based solely on the papers submitted. Although the Appellate Division stated that the "better practice" would be to hold an emergency hearing on request, it found that the hospital had acted in good faith.

Magrini appealed from the decision of the Appellate Division. As has been noted, we granted his application for direct appellate review.

3. *Mootness.* Before Magrini filed his appeal from the order denying his request for an emergency hearing, he agreed to a conditional voluntary admission. In view of Magrini's conditional voluntary status, the order appealed from no longer has effect, and the appeal is moot. See *Acting Supt. of Bournewood Hosp.* v. *Baker*, 431 Mass. 101, 103 (2000). However, "[i]ssues involving the commitment and treatment of mentally ill persons are generally considered matters of public importance" and present "classic examples" of issues that are capable of repetition, yet evading review. *Id.*, quoting *Guardianship of Doe*, 391 Mass. 614, 618 (1984). We note that, even if Magrini had not agreed to a

---

[12]The attending psychiatrist was not the same physician who had examined and admitted Magrini on June 8 and June 9.

conditional voluntary admission, appellate review of the denial of his request for an emergency hearing would not have occurred prior to the expiration of his temporary commitment or prior to the filing of a petition by the hospital for his continued commitment under G. L. c. 123, §§ 7 and 8. We therefore exercise our discretion and address the merits.

4. *Emergency hearing.* We are called in this appeal to interpret various aspects of the emergency hearing provision in G. L. c. 123, § 12 (*b*), third par., and, thus, are faced with questions of law. We first address the hospital's contention that the judge correctly denied Magrini's request for an emergency hearing because the basis Magrini cited to obtain an emergency hearing was outside the scope of G. L. c. 123, § 12 (*b*). The hospital relies on the following italicized language in the emergency hearing provision: "Any person admitted under the provisions of this subsection, who has reason to believe that such admission is the result of an abuse or misuse *of the provisions of this subsection,* may request . . . an emergency hearing" (emphasis supplied). G. L. c. 123, § 12 (*b*), third par. Under the hospital's interpretation, a person is entitled to an emergency hearing only when the person alleges an abuse or misuse of one of the specifically enumerated rights set forth in § 12 (*b*), such as: the person's examination was not conducted by a designated physician, § 12 (*b*), first par.; the person's examination was not conducted in a timely manner, *id.*; the designated physician failed to apply the correct standard to admit the person, *id.*; the hospital did not inform the person of its obligation to notify CPCS, § 12 (*b*), second par.; the hospital did not notify CPCS of the person's admission, *id.*; CPCS failed to appoint an attorney for the person, *id.*; or the appointed attorney failed to meet with the person.

The hospital's reading of the emergency hearing provision is too narrow. That provision states that "[a]ny person admitted" has the right to request an emergency hearing in the appropriate District Court where he or she "has reason to believe" that the admission has occurred because of "an abuse or misuse" of a § 12 (*b*) admission. That the emergency hearing provision provides any person admitted with the opportunity to be heard, and heard promptly, if the admission resulted from any abuse or misuse of a § 12 (*b*) admission is consistent with the obvious intent of the

Legislature. While there are abuses or misuses that may occur based on the denial of one or more of the specifically enumerated rights provided in the first and second paragraphs of § 12 (b), the broad language serves as a catch-all provision to include other circumstances that have resulted in a wrongful § 12 (b) admission.[13] Our interpretation is consistent with the intent of the Legislature to extend further procedural protections to persons who, by virtue of their temporary involuntary commitment, are experiencing a "massive curtailment" of their liberty. *Commonwealth* v. *Nassar*, 380 Mass. 908, 917 (1980), quoting *Lessard* v. *Schmidt*, 349 F. Supp. 1078, 1093 (E.D. Wis. 1972). See *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001) ("statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result").

Magrini's request for an emergency hearing unquestionably demonstrated a proper basis of a misuse or abuse contemplated under § 12 (b), third par., to warrant an emergency hearing. The hospital's conduct of effectuating a second § 12 (b) commitment rendered the order directing Magrini's discharge illusory.[14] The hospital never complied with the court order, and instead continued to confine Magrini against his will in a locked psychiatric unit. This caused Magrini to be involuntarily confined for eleven days without a hearing. Where Magrini was not afforded his statutory rights and was not permitted to be discharged in accordance with a court order, he clearly satisfied the minimal showing that his second § 12 (b) commitment resulted from a misuse or abuse under the § 12 (b) process.

---

[13]These other circumstances do not include a challenge to the substance of the designated physician's actual "determin[ation] that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness," G. L. c. 123, § 12 (b), first par., because the Legislature has already established an appropriate time to challenge that determination, namely, at the hearing afforded to a person when the hospital is seeking the person's continued commitment beyond the three-day hospitalization. G. L. c. 123, §§ 7, 8. See note 8, *supra*. See also *Wolfe* v. *Gormally*, 440 Mass. 699, 704 (2004) (statute is to be construed to give effect to all its provisions so no part will be inoperative).

[14]This is not to say that a hospital could never recommit a person on a temporary basis. The statutory scheme does not prohibit such action, but that issue is not before us.

The hospital argues that, under the emergency hearing provision, when a person has sufficiently demonstrated a basis for a hearing, such hearing is directory and not mandatory. The operative language provides that "unless a delay is requested by the person [who has been temporarily admitted] or through counsel, the district court *shall* hold such hearing on the day the request is filed with the court or not later than the next business day" (emphasis supplied). G. L. c. 123, § 12 (*b*), third par. In view of the significant liberty interests at stake and our previous interpretations that the use of the term "shall" imports a mandatory or imperative obligation, *Commonwealth* v. *Gross*, 447 Mass. 691, 694 (2006), and cases cited, we conclude that, unless a request for an emergency hearing on its face is patently frivolous,[15] the obligation to hold an emergency hearing is mandatory. To ensure meaningful review and due process to a person whose liberty is then at stake, we further conclude that the person temporarily committed has the right to be present at the hearing and may be heard. The hearing, however, does not necessarily have to be an evidentiary one. The judge conducting the hearing will have the discretion to decide whether evidence should be required in light of the abuse or misuse alleged.[16]

5. *Conclusion.* The decision and order of the Appellate Division dismissing the appeal is vacated. The order of the District Court denying Magrini's request for an emergency hearing is vacated.

*So ordered.*

---

[15]Concerns over an inundation of frivolous requests do not appear to be valid, as statistics produced by the department show that, over a six-year period, there have been 41,140 temporary commitments under § 12 (*b*) and only 279 emergency hearing requests.

[16]Suggestions made in internal transmittals or memoranda from the Chief Justice of the District Court regarding commitment proceedings are just that. Cf. *Eagle-Tribune Publ. Co.* v. *Clerk-Magistrate of the Lawrence Div. of the Dist. Court Dep't*, 448 Mass. 647, 648 n.4 (2007), quoting *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't*, 439 Mass. 352, 357 (2003) ("While lacking the force of law or rules, the Standards of Judicial Practice [regarding complaint procedure] . . . are 'administrative regulations promulgated by the Chief Justice of the District Court that [are] treated as statements of desirable practice' to be followed in the District Courts").