Hand, J.
Appellant P.I. challenges the propriety of an order of observation at, and petition for commitment to, Bridgewater State Hospital (“BSH”) pursuant to G.L.c. 123, §18(a). Additionally, he appeals the denial of his motions to dismiss those orders as well as the court’s authorization of BSH’s motion to amend its petition for commitment under §18(a) to an order for civil commitment pursuant to G.L.c. 123, §§7 and 8. For the reasons below, we vacate the Lawrence District Court’s May 9, 2012 order for observation pursuant to §18(a) (“May 9 Order”). Given that the subsequent orders from which P.I. appeals each depended upon the validity of the May 9 Order, each of those orders is also vacated. In light of these determinations, we do not reach P.I.’s remaining arguments on appeal.
P.I. is an adult male who, as of February 15, 2012, had been charged in the Lawrence District Court with assault and battery and threats to commit a crime. He was held on a cash bail in connection with those charges. On February 15,2012, the Lawrence District Court ordered that P.I. be evaluated at BSH pursuant to G.L.c. 123, §15 (b) for competency to stand trial.
After conducting the requested evaluation, the examining physician opined that PI. was incompetent to stand trial. Consequently, on March 5, 2012, BSH petitioned *117 for P.L’s commitment pursuant to G.L.c. 123, §16 (b) ,[1] After a hearing on April 4,2012, the court found P.I. not competent to stand trial and ordered P.I.’s commitment to BSH for six months under that section. See G.L.c. 123, §16(b) (authorizing six-month commitment for untried male criminal defendant at BSH in circumstances including where (1) defendant is found incompetent to stand trial; and (2) petitioner proves beyond a reasonable doubt that (a) defendant suffers from mental illness, (b) defendant is not a proper subject for commitment to a Department of Mental Health facility, and (c) failure to hospitalize the defendant in strict security would create a likelihood of serious harm).
On April 18, 2012, at P.L’s request,[2] the court ordered a second competency evaluation pursuant to §15 (b). That evaluation was conducted at BSH by Sandra L. Ehlinger, Ph.D. Dr. Ehlinger’s May 8,2012 report (“Ehlinger Report”) was sent back to the court with P.I. on May 9, 2012. The Ehlinger Report is not part of the record before us. Evidently, the Ehlinger Report included Dr. Ehlinger’s opinion that P.I. had been restored to competency. The cover letter to that report (“Ehlinger Cover Letter”), which is part of the record, includes Dr. Ehlinger’s recommendation that P.I. be evaluated to determine his need for further hospitalization based on his mental illness: “If the Court finds [P.I.] competent to stand trial, it is recommended that he be returned to Bridgewater State Hospital under an §18(a) observation order.”[3]
On May 9, 2012, the Lawrence District Court found P.I. to have been restored to competency.[4] This determination terminated P.L’s §16(b) commitment. G.L.c. 123, §17(a) (“Whenever a hearing is held and the court finds that the person is competent to stand trial, his commitment, if any, to a facility or to the Bridgewater state hospital shall be terminated and he shall be returned to the custody of the court for trial.”). At the moment P.L’s §16(b) commitment terminated, P.I. ceased to be a *118 patient at BSH unless and until he was committed there anew. See Matter of C.B., 2013 Mass. App. Div. 42,43.
As the history of the case bears out, the automatic termination of P.I.’s §16(b) commitment did not allay the court’s concerns about P.I.’s mental illness or the risk of serious harm mental illness presented by an unhospitalized P.I. Of the available steps the court could have taken to address these concerns, including a civil commitment pursuant to G.L.c. 123, §12, the court relied on §18 (a) as the appropriate mechanism for evaluating P.I., who was then a person held on a cash bail.
Section 18(a) of G.L.c. 123, set out in the margin,[5] defines a specific process by *119 which “the person in charge of any place of detention” may seek the commitment of a “person confined therein” based on his or her belief that the confined person “is in need of hospitalization by reason of mental illness” at a Department of Mental Health facility or at BSH. First, the “person in charge of any place of detention ... shall cause such prisoner to be examined at such place of detention by a physician or psychologist, designated by the department as qualified to perform such examination.” Id. The examiner “shall report the results of the examination to the district court which has jurisdiction over the place of detention or, if the prisoner is awaiting trial, to the court which has jurisdiction of the criminal case. Such report shall include an opinion, with reasons therefore, as to whether such hospitalization is actually required.” Id.
Although BSH’s appeal argues that BSH was the petitioner on May 9, 2012, the record indicates otherwise. The Ehlinger Cover Letter and, presumably, the Ehlinger Report recommended that P.I. be committed under §18(a). Neither of those documents, however, amounted to a petition under that section. Putting aside the disputed question of whether BSH is a “place of detention,” we conclude that Dr. Ehlinger was not the “person in charge” of BSH in May, 2012, and so did not have authority to file a §18 (a) petition in connection with P.I.’s detention at that facility. See G.L.c. 123, §18(a).
The person authorized to make the May 9, 2012 §18 (a) order, and who did issue that order, was the Lawrence District Court judge before whom P.I. appeared on May 9, 2012, when P.I. was detained on bail in the District Court lockup. The lockup, not BSH, was the “place of detention” relevant to the May 9 Order; the judge, not Dr. Ehlinger, was the “person in charge” of that place.
The fatal flaw to the May 9 Order was not in BSH’s status as a place of detention, but in the failure, from what we discern in this record, of the Lawrence District Court to follow to the letter the procedures required under §18(a). Section 18(a) requires that before any observation or commitment order is issued under that section, the person in charge of the place of detention in which the prisoner is confined “shall cause such prisoner to be examined at such place of detention by a physician or psychologist, designated by the department as qualified to perform such examination.”[6] G.L.c. 123, §18(a).
It is very clear that P.I. had been examined at BSH with regard to competency, and that the court had a clear indication from the examiner, Dr. Ehlinger, that in her view, additional examination was advisable. The statute, however, requires that a §18 (a) observation order be supported by an examination at the place of detention; here, the court house. There is nothing in the record to suggest that P.I. was examined at the court house on May 9, 2012. In fact, from the face of the May 9 Order, it is clear that the court’s order was based on Dr. Ehlinger’s May 8, 2012 report concerning P.I.’s competency. While we have no difficulty appreciating the potential *120 redundancies of ordering an in-court §18 (a) evaluation within a single day of BSH’s competency report, and any court’s legitimate interest in making economical use of the finite resources available through our court clinics to provide these types of evaluations, those considerations do not change the fact that the plain language of §18(a) requires an evaluation at the place of detention. “A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result.” Sullivan v. Town of Brookline, 435 Mass. 353, 360 (2001). This point is particularly well taken in the context of a mental health proceeding. As the Supreme Judicial Court has recognized, involuntary mental health commitment entails “a ‘massive curtailment’ of [the committed person’s] liberty.” Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 784, quoting Lessard v. Schmidt, 349 F. Supp. 1078, 1093 (E.D. Wis. 1972).
Regardless of whether Dr. Ehlinger’s May 8, 2012 report would otherwise have met the requirements of §18 (a) — a question we cannot decide on this record — any examination by Dr. Ehlinger was not made as §18 requires. On that basis, RI.’s motion to dismiss the May 9,2012 order should have been allowed, and his commitment on that basis vacated. Because the validity of the subsequent commitments and related orders depends on the validity of the May 9 Order, we vacate those orders as well.

 “During the period of observation of a person believed to be incompetent to stand trial... the medical director of the Bridgewater state hospital may petition the court having jurisdiction of the criminal case for the commitment of the person to a facility or to the Bridgewater state hospital.” G.L.c. 123, §16(b).

 Section 15(d) of G.L.c. 123 provides that “at any time before trial any party to the case may request a hearing on whether the defendant is competent to stand trial.”

 We take no position on P.L’s characterization of these recommendations, as included in the Cover Letter, as gratuitous or impermissible additions to the opinion she was required to provide with respect to the court-ordered §15 (b) evaluation. On a physician’s or psychologist’s completion of a given §15 (b) evaluation, §15 (c) calls for the examiner to “forthwith give to the court written signed reports of their findings, including the clinical findings bearing on the issue of competence to stand trial. ... Such reports shall also contain an opinion, supported by clinical findings, as to whether the defendant is in need of treatment and care offered by the department.” G.L.c. 123, §15 (c). The May 9, 2012 order of commitment pursuant to §18 (a) indicates that the judge issued that order based on a “report from Dr. Ehlinger.” On the record before us, we cannot say whether the requisite opinion supporting clinical findings was included in that report.

 The appellate record includes neither the court’s finding nor its order, but there is no dispute between the parties as to the court’s finding of competency on this date.

 Section 18(a) of G.L.C. 123 provides:
If the person in charge of any place of detention within the commonwealth has reason to believe that a person confined therein is in need of hospitalization by reason of mental illness at a facility of the department or at the Bridgewater state hospital, he shall cause such prisoner to be examined at such place of detention by a physician or psychologist, designated by the department as qualified to perform such examination. Said physician or psychologist shall report the results of the examination to the district court which has jurisdiction over the place of detention or, if the prisoner is awaiting trial, to the court which has jurisdiction of the criminal case. Such report shall include an opinion, with reasons therefore, as to whether such hospitalization is actually required. The court which receives such report may order the prisoner to be taken to a facility or, if a male, to the Bridgewater state hospital to be received for examination and observation for a period not to exceed thirty days. After completion of such examination and observation, a written report shall be sent to such court and to the person in charge of the place of detention. Such report shall be signed by the physician or psychologist conducting such examination, and shall contain an evaluation, supported by clinical findings, of whether the prisoner is in need of further treatment and care at a facility or, if a male, the Bridgewater state hospital by reason of mental illness. The person in charge of the place of detention shall have the same right as a superintendent of a facility and the medical director of the Bridgewater state hospital to file a petition with the court which received the results of the examination for the commitment of the person to a facility or to the Bridgewater state hospital; provided, however, that, notwithstanding the court’s failure, after an initial hearing or after any subsequent hearing, to make a finding required for commitment to the Bridgewater state hospital, the prisoner shall be confined at said hospital if the findings required for commitment to a facility are made and if the commissioner of correction certifies to the court that confinement of the prisoner at said hospital is necessary to insure his continued retention in custody. An initial court order of commitment issued subject to the provisions of this section shall be valid for a six-month period, and all subsequent commitments during the term of the sentence shall take place under the provisions of sections seven and eight and shall be valid for one year.

 The use of the word “shall” “imports a mandatory or imperative obligation.” Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 785 (2008), citing Commonwealth v. Gross, 447 Mass. 691, 694 (2006). See also Commonwealth v. Cook, 426 Mass. 174, 180-181 (1997), and cases cited (interpreting “shall” as mandatory, in accord with general rule of statutory interpretation).