Kirkman, J.
The appellant, C.D., is appealing two rulings that keep him involuntarily committed in a psychiatric unit at Arbour Hospital (“hospital”) in Quincy, Massachusetts. He sought and was granted expedited review pursuant to Dist./Mun. Cts. R.AD.A, Rule 2. The rulings that C.D. is challenging are: 1) the October 17,2014 denial of his request for immediate discharge from the hospital pursuant to G.L.c. 123, §12(d), and 2) the October 30,2014 denial of his motion to dismiss the G.L.c. 123, §§7 and 8 proceeding that resulted in his current commitment Essentially, C.D. argues that the hospital failed to seek a timely commitment pursuant to §§7 and 8 of G.L.c. 123 and, therefore, his later readmission and commitment under G.L.c. 123 is invalid.[1] There is little dispute about the history of this case leading to the present controversy.[2]
On October 3,2014, C.D. was involuntarily committed to Arbour Hospital pursuant to G.L.c. 123, §12(b). The commitment was to last three days unless the patient voluntarily signed himself into the hospital pursuant to G.L.c. 123, §§10,11, and 12 (c), or the hospital requested a further commitment under G.L.c. 123, §§7 and 8 by October 8,2014. Neither a request for voluntary admission, nor a request for further involuntary commitment, was made by October 8.
On October 16,2014, C.D., through his attorney, contacted the hospital’s attorney, demanding an immediate discharge because no voluntary or involuntary requests for commitment had been timely filed. The hospital responded by “administratively discharging” (but not releasing) C.D., and immediately readmitting him pursuant to G.L.c. 123, §12(a) and (b). Upon C.D.’s readmission, the hospital filed a petition pursuant to G.L.c. 123, §§7 and 8 to have him committed for a longer period under the statute. C.D. immediately filed a request for an emergency hearing pursuant to G.L.c. 123, §12 (b) before the Quincy District Court.
*30 The emergency hearing was held at the hospital the next day. The trial court denied C.D.’s request for immediate discharge, finding that the hospital properly filed its readmission request. C.D. then was ordered held for hearing on the hospital’s petition under G.L.c. 123, §§7 and 8. C.D. appealed the denial of the discharge request on October 20,2014.
The hearing on the §§7 and 8 petition was held on October 30, 2014. C.D. moved to dismiss the petition because it had not been timely filed. The trial court denied the motion, finding that the earlier ruling was proper. The judge found that when the hospital “recognized the original error [in detaining the patient without process], it took appropriate steps to cure the error.” After further hearing, pursuant to the §§7 and 8 petition, C.D. was involuntarily committed for a period not to exceed six months. An appeal was filed of the denial of the motion to dismiss on November 4,2014. The essential issue on this appeal is whether the October 16, 2014 readmission of C.D. was “the result of an abuse or misuse” of G.Lc. 123, §12. G.L.c. 123, §12 (b). We hold that it was.
Section 12(a) of G.L.c. 123 allows, among others, a physician to authorize, after examination of a person, the restraint of that person and apply for his or her hospitalization for a three-day period on the reasonable belief that failure to hospitalize “would create a likelihood of serious harm by reason of mental illness.” Hospitalization may still occur without an examination “because of the emergency nature of the case and because of the refusal of the person to consent to such examination.” Id. Section 12(d) of the statute states, “A person shall be discharged at the end of the three day period unless the superintendent applies for a commitment under the provisions of sections seven and eight of this chapter or the person remains on a voluntary status.” The language of these sections could not be clearer.
‘[W]here the language of the statute is plain and unambiguous ... legislative history is not ordinarily a proper source of construction.’ In construing a statute, words are to be accorded their ordinary meaning and approved usage.
The word ‘shall’ is ordinarily interpreted as having a mandatory or imperative obligation. In addition, a general rule exists that directions to public officers for the protection of rights are mandatory. Since the words of the statute are clear and unambiguous and since, given their ordinary meaning, they yield a workable and logical result, there is no need to resort to extrinsic aids in interpreting the statute. It must be kept in mind that this statute provides a mechanism for a restraint on an individual’s personal liberty” (citations omitted).
Hashimi v. Kalil, 388 Mass. 607, 609-610 (1983).
In this case, the patient was properly admitted and detained on his initial hospitalization. He was then held until he was readmitted thirteen days later. There is no statutory or other bar to readmission of a patient who has been previously involuntarily committed under the statutory scheme. See Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 784 n.14 (2008). Indeed, the statutory scheme is directed at the ongoing nature of mental illness and the need for services that protect the patient and the public. See Commonwealth v. Nassar, 380 Mass. 908, 917-918 (1980) (stating that dual purposes of G.L.c. 123 are to protect patient and public). But that scheme also recognizes the patients liberty interest Hashimi, supra at 610. See also Commonwealth v. Parra, 445 Mass. 262, 263 (2005).
*31 The problem here is that the patient was continuously being held during the thirteen-day period. It was not until his attorney demanded his release that the hospital took any action regarding the ongoing detention. And its action was to detain the patient until a judge acted on the patients request to hold an emergency hearing. At oral argument before this Division, counsel for the hospital revealed that die doctor signing the readmission papers never examined C.D.; he simply looked over his medical records. Section 12(a) of G.Lc. 123 does not require an examination of the patient if it is not possible because of the “emergency nature of the case.” Yet the emergency requiring further detention of this patient was created by the hospital’s failure to act according to the statute.
The hospital justifies its action by arguing that this was simply a readmission after discharge pursuant to G.L.c. 123, §12(a) and (b). It claims that the readmission arose after the patient was “administratively discharged.” In the present context, the hospital’s action was no discharge at all as C.D. remained held in an acute care setting beyond the statutory three-day period. G.Lc. 123, §12 (d); 104 CMR §27.09. See 130 CMR §425.418 (establishing discharge requirements for psychiatric inpatient hospitals). The hospital forcefully asserts, however, that once it realized C.D. had been held beyond the statutory period, it took the necessary procedural steps to protect his liberty interest, while protecting the public against a dangerous person. That assertion loses its force when it is clear that the hospital could have easily, and timely, filed the §§7 and 8 petition. But the hospital chose not to file a petition timely. Instead, it used the fiction of an administrative discharge in an attempt to resurrect its right to seek further deprivation of the patienf s freedom.
If a patient’s liberty interest is to have any guarantee under G.L.c. 123, §12(d), then the strict time requirements of the statute must be met. Magrini, supra at 784. See Nassar, supra at 917 (referring to involuntary detention of those suffering from mental illness as involving “massive curtailment of liberty”). See also Parra, supra at 263 (statutory deadlines for civil commitment of those suspected of being sexually dangerous are mandatory to protect defendant’s liberty).
The hospital distinguishes the holding of Magrini by pointing out that, in that case, the hospital ignored a court order to discharge the patient without a proper emergency hearing like the one held in this case. Id at 781-782. That distinguishing feature fails, however. In this case, the hospital was under a statutory directive to discharge the patient The patient should not have to wait until a court orders a discharge for the statute to take effect. It cynically defeats the purpose of the statute to suggest that a court must order discharge before the patient is free to leave the facility. Placing the burden on the patient to sue for his release under the emergency provisions of the law further erodes the protection of his liberty interest that the Legislature created, and then strengthened by lowering the number of days the patient could be held. See G.Lc. 123, §12, as amended by St. 2000, c. 249, §§4-8, and St. 2004, c. 410, §2.
In sum, by not moving under §§7 and 8 of G.L.c. 123 or discharging the patient within three days of his initial involuntary commitment, the hospital’s ongoing detention of C.D., regardless of the later court proceedings, was an abuse or misuse of the statute. The process that was due C.D. was due within three days, not eight. The trial court erred in not granting C.D.’s immediate release on his emergency petition, and there was no jurisdictional basis for the later hearing on the §§7 and 8 petition. The orders of the trial court are reversed, and the matter is remanded for the immediate discharge of C.D. from Arbour Hospital on the present expedited request.
So ordered.

 C.D.’s argument regarding the two rulings raises the same issue; thus, joinder of his appeals was ordered by this Division.

 In the December 2,2014 order of this Division suspending the rules and allowing an expedited process, a time line was set for the filing of briefs, appendices, and reply briefs. C.D. moved to strike the supplementary filings by the hospital because the hospital had not sought prior approval of this Division. Tie motion also asserts that some of the information contained in the hospital’s supplemental appendix is not relevant and any argument referring to the materials in the supplemental appendix should be stricken. Because of our rulings, infra, it is not necessary for us to rule on C.D.’s motion.