NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-608
23-P-911

I.L.

vs.

ELIZABETH S. TEMIN & others[1] (and a companion case[2]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In these paired appeals, the pro se plaintiff argues that judges of the Suffolk and Middlesex Superior Courts improperly dismissed his complaints against the defendants, who are medical providers, and the hospitals that employ them. While the procedural histories giving rise to the controversies before us are complicated, the matters are factually straightforward. On May 9, 2019, the plaintiff presented himself to the Massachusetts General Hospital (MGH) emergency room department on the advice of his psychiatrist, to obtain a voluntary psychiatric evaluation. After examining him, medical providers

_____

[1] Wendy L. Macias Konstantopoulos, James Luccarelli, Gerald O. Duffy, David Fredrick, Adriana M. K. Reguera, Lauren Fitzgerald Oshea, and "John/Jane Does."

[2] I.L. vs. McLean Hospital & others.

at MGH caused the plaintiff to be involuntarily committed according to the procedure set forth in G. L. c. 123, § 12 (a), due to an "unknown degree of risk of unintentional harm to self and impending homelessness." While at MGH, the plaintiff attempted to elope and was physically restrained by the hospital's security staff, placed in four-point restraints,[3] and administered medication to address his agitated behavior.

As a result of the examination's findings, the plaintiff was transferred to McLean Hospital (McLean) on the following day, for a period not to exceed three days pursuant to G. L. c. 123, §§ 12 (a) and (b). McLean applied to extend the plaintiff's commitment on the same day pursuant to §§ 7 and 8 of G. L. c. 123. That application was denied following a hearing, and the plaintiff was ultimately discharged from McLean on May 16, 2019.[4,5]

_____

[3] Four-point restraint is a method of restraint that involves the immobilization of a patient's limbs independently of one another. See Williams v. Burton, 943 F.2d 1572, 1578 (11th Cir. 1991) (Pittman, J., dissenting), cert. denied, 505 U.S. 1208 (1992) (describing "four-point, spread-eagle restraint").

[4] As we discuss infra, this hearing and the subsequent discharge were timely. See Massachusetts Gen. Hosp. v. C.R., 484 Mass. 472, 481 (2020).

[5] The plaintiff was only held at MGH for the duration of the initial examination pursuant to G. L. c. 123, § 12 (a). See Massachusetts Gen. Hosp., supra at 482. The remainder of his commitment occurred at McLean.

2

Almost two years following his discharge from McLean, on May 10, 2021, the plaintiff filed a complaint in Middlesex Superior Court against MGH and McLean, accusing them of "kidnapping & unlawful confinement."  McLean filed a motion to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), which was allowed on September 28, 2021. MGH also filed a motion to dismiss, which was denied, but later it filed a motion for summary judgment that was allowed, on June 23, 2023.[6]  The same judge granted both the dismissal as to McLean and the entry of judgment for MGH after concluding that the defendants were immune from civil liability pursuant to G. L. c. 123, § 22.[7]

Separately, on April 20, 2022, the plaintiff filed a complaint in Suffolk Superior Court against medical providers employed by MGH, alleging "statutory non-compliant unlawful confinement," "lack of consent," "negligence/medical malpractice, "intentional infliction of emotional distress," and "misdiagnosis/failure to examine."  A different judge dismissed

---

[6] The plaintiff amended his complaint on February 21, 2022, to allege false imprisonment and unlawful confinement against MGH and McLean, even though McLean had already been dismissed as a defendant by that point in the proceedings.  A judge later clarified that the plaintiff was only permitted to amend the complaint with respect to MGH.

[7] The plaintiff's appeal from the judgment of dismissal and from the summary judgment was docketed as 23-P-911.

that complaint on a motion by the defendants, concluding similarly that the defendants were immune from civil liability under G. L. c. 123, § 22.[8]  We affirm the dismissals of both complaints and the summary judgment in favor of MGH.

Discussion.  "General Laws c. 123, § 12, governs the emergency restraint, evaluation, care, and hospitalization of persons posing a risk of serious harm due to mental illness." Massachusetts Gen. Hosp. v. C.R., 484 Mass. 472, 477 (2020).

> "A physician . . . who, after examining a person, has reason to believe that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness may restrain or authorize the restraint of such person . . . at a public facility or at a private facility authorized for such purposes by the [Department of Mental Health]."

G. L. c. 123, § 12 (a).  The ensuing hospitalization of a person so restrained may last for three days.  See Massachusetts Gen. Hosp., supra at 480.  See also G. L. c. 123, § 12 (a) ("A physician . . . may . . . apply for the hospitalization of such person for a 3-day period").

"The statute further provides that '[a] person shall be discharged at the end of the three day period unless the superintendent applies for a commitment under the provisions of [G. L. c. 123, §§ 7 and 8,] or the person remains on a voluntary basis.'"  Massachusetts Gen. Hosp., 484 Mass. at 480, quoting

---

[8] The plaintiff's appeal from this judgment of dismissal was docketed as 23-P-608.

4

G. L. c. 123, § 12 (d).  "If the superintendent of a facility moves for commitment of the patient before the end of the three-day time period, a court generally has five days to commence a hearing."  Id. at 481, citing G. L. c. 123, § 7 (c).  "The statutory scheme does not allow recovery by persons involuntarily restrained or committed."  Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 781 n. 9 (2008), citing G. L. c. 123, § 22.

With respect to emergency hearings, the version of G. L. c. 123, § 12 (b), in effect at the pertinent time provided that

> "Any person admitted under the provisions of this subsection, who has reason to believe that such admission is the result of an abuse or misuse of the provisions of this subsection, may request, or request through counsel an emergency hearing in the district court in whose jurisdiction the facility is located, and unless a delay is requested by the person or through counsel, the district court shall hold such hearing on the day the request is filed with the court or not later than the next business day."[9]

Such an emergency hearing cannot be used to challenge "the substance of the designated physician's actual 'determin[ation] that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness.'" Newton-Wellesley Hosp., 451 Mass. at 784 n. 13 (2008), quoting G. L. c. 123, § 12 (b).

---

[9] The statute was rewritten by St. 2020, c. 260, § 43, which became effective January 1, 2021, but the revisions did not change the substance of G. L. c. 123, § 12 (b).

5

"We review the allowance of a motion to dismiss de novo, accepting as true the facts alleged in the plaintiff's complaint as well as any favorable inferences that reasonably can be drawn from them" (citation omitted). Braley v. Bates, 100 Mass. App. Ct. 259, 260 (2021). "To survive a motion to dismiss, the pleading stage requires factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief" (quotations and citation omitted). Id. at 261.

"We review a decision to grant summary judgment de novo." Bank of N.Y. v. Bailey, 460 Mass. 327, 331 (2011). "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law."[10] Id., quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

---

[10] The plaintiff relies on Ahern v. O'Donnell, 109 F.3d 809, 819 (1st Cir. 1997), to argue that we should review for error of law. His reliance on this authority is inapposite, however, because the portion of the decision to which he refers deals with the principle of qualified immunity for law enforcement officers. The court in Ahern reviewed a grant of summary judgment de novo. See id. at 815 ("Our review of the district court's grant for summary judgment is de novo").

6

The plaintiff raises two principal arguments in his brief before this court.[11]  First, he contends that the defendants are not entitled to immunity under G. L. c. 123, § 22, because G. L. c. 123, § 12 (a), requires that an individual be examined prior to being subjected to involuntary commitment, and he was not examined before being committed by the defendants.  Accordingly, he contends, the defendants should not have been granted summary judgment pursuant to G. L. c. 123, § 22.  Although the plaintiff is, at times, unclear in his argumentation, we believe that he considers this alleged failure of the defendants to examine him to abrogate the immunity of all defendants in both cases.

The argument fails on its face, however, as the plaintiff himself repeatedly conceded -- in his complaints and before this court -- that he was in fact examined by the MGH defendants.[12]  Even viewing the evidence in the light most favorable to the

---

[11] Although the plaintiff's two appeals have been docketed separately, he submitted an identical brief in each case.

[12] The plaintiff's references to his examinations by the MGH defendants are numerous.  It suffices to say that in his complaint before the Suffolk Superior Court, the plaintiff claimed that the MGH defendants "took part in the initial psych evaluation," "examined [the plaintiff] and was surprised that he came in for a psychiatric evaluation," and "met with [the plaintiff] and provided an evaluation."  In his original complaint before the Middlesex Superior Court, he claimed that the "second doctor evaluated me & said I was free to go."  In his brief before this court, quoting his amended complaint before the Middlesex Superior Court, he wrote "first doctor at MGH examined [the plaintiff]."

7

plaintiff, it remains undisputed that the MGH defendants did, in fact, examine the plaintiff in accord with G. L. c. 123, § 12 (a). Therefore, immunity under G. L. c. 123, § 22, on these grounds applies.

Second, the plaintiff argues that McLean is not immune under G. L. c. 123, § 22, because it failed to accommodate his demand for an emergency hearing as required by G. L. c. 123, § 12 (b). The plaintiff asserts that he began requesting an emergency hearing after arriving at McLean. This argument fails as well, as the plaintiff appears to conflate an emergency hearing available under G. L. c. 123, § 12 (b), with the hearing available to challenge involuntary commitments provided by G. L. c. 123, § 7. See Newton-Wellesley Hosp., 451 Mass. at 784 n. 13. Section 7 requires that the hearing which permits a plaintiff to challenge "the designated physician's actual determin[ation] that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness" must occur within five days (citation omitted). Id.[13] McLean

---

[13] We are unpersuaded by the plaintiff's contention that he sought to challenge his commitment on grounds that justified an emergency hearing. The plaintiff argues that the doctors who examined him did not find that he should be hospitalized and that his commitment therefore qualified as an "abuse or misuse" of G. L. c. 123, § 12. G. L. c. 123, § 12 (b). However, an assertion that the patient is, in fact, mentally well is precisely the type of claim that may not be argued at an emergency hearing under G. L. c. 123, § 12 (b). See Newton-Wellesley Hosp., supra.

moved for the extended commitment of the plaintiff pursuant to G. L. c. 123, §§ 7 and 8, on May 10, 2019, and the plaintiff's hearing occurred on May 16, 2019.[14]  As "intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation," Mass. R. Civ. P. 6 (a), 365 Mass. 747 (1974), the plaintiff's hearing was timely.[15]  See Massachusetts Gen. Hosp., 484 Mass. at 481.

Judgments affirmed.

By the Court (Milkey, Henry & Desmond, JJ.[16]),

Assistant Clerk

Entered:  April 8, 2024.

---

[14] General Laws c. 123, § 12 (a), permits an authorized facility to hold a patient for up to three days before applying to extend the commitment under G. L. c. 123, §§ 7 and 8.  Here, McLean applied for the extension on May 10, 2019, the same day the patient arrived at its facility.

[15] The plaintiff further "preserves his right to challenge [Supreme Judicial Court] Rule 9A on constitutional grounds," and provides fourteen arguments supporting his claim that such a rule is violative of due process.  We decline to consider these arguments as, notwithstanding the plaintiff's general references to constitutional rights, they are unsupported by legal citation and do not rise to the level of appellate argument.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). We further note that the plaintiff concedes that this court does not have the jurisdiction to review his challenge to the requirements of Supreme Judicial Court rules.

[16] The panelists are listed in order of seniority.