COMMONWEALTH vs. FREDERICK D. DELVERDE.

Essex.    October 6, 1987. — January 7, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Mental Health. Practice, Criminal,* Competency to stand trial. *Practice, Civil,* Commitment of mentally ill person.

At a hearing on the Commonwealth's motion to commit a criminal defendant to Bridgewater State Hospital for six months pursuant to G. L. c. 123, § 16 (*b*), the judge correctly concluded on the basis of expert testimony that the defendant's serious depression coupled with his mental retardation severely affected his mood and behavior, and that, as a result, the defendant's mental condition was a "mental illness" as defined in 104 Code Mass. Regs. § 3.01 (1) (a). [449-450]

Sufficient evidence supported the determination by the judge at a commitment hearing held pursuant to G. L. c. 123, § 16 (*b*), that failure to retain a criminal defendant, who was found to have a history of assaultive behavior, in custody at Bridgewater State Hospital would create a likelihood of serious harm to others. [450-452]

At a hearing on the Commonwealth's motion to commit a criminal defendant to Bridgewater State Hospital for six months under the provisions of G. L. c. 123, § 16 (*b*), the judge properly concluded that Bridgewater was the only suitable facility in the Commonwealth to maintain custody of a mentally ill, male criminal defendant who was incompetent to stand trial on pending charges of murder and rape. [452]

INDICTMENTS found and returned in the Superior Court Department on March 25, 1980.

A motion for commitment, filed on March 21, 1985, was heard by *Walter E. Steele,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Carmen A. Frattaroli* for the defendant.

*Dyanne Klein Polatin,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. After our opinion in *Commonwealth* v. *Del-Verde,* 398 Mass. 288 (1986), the Commonwealth again[1] moved to commit the defendant, Frederick D. DelVerde, to Bridgewater State Hospital (Bridgewater) for a period of six months pursuant to G. L. c. 123, § 16 (*b*) (1986 ed.). After hearing, the judge made findings and rulings and ordered Del-Verde committed to Bridgewater for six months. See G. L. c. 123, §§ 8 (*a*), (*b*), & 16 (*b*). See also *Commonwealth* v. *Nassar,* 380 Mass. 908 (1980).

DelVerde was indicted for the crimes of murder in the first degree and rape in March, 1980. Since that time, DelVerde has been found incompetent to stand trial. See *Commonwealth* v. *DelVerde, supra* at 289-290. It is undisputed that DelVerde is a mentally retarded person. There also is no challenge on appeal to the judge's finding that DelVerde currently is incompetent to stand trial. The thrust of this appeal is that the evidence at the hearing is insufficient to support the judge's conclusions that (1) DelVerde is mentally ill; (2) failure to retain DelVerde at Bridgewater would create a substantial likelihood of serious harm; and (3) Bridgewater is the appropriate facility for Del-Verde. We transferred the matter to this court on our own motion. We affirm the order of the Superior Court judge.

At the hearing, the Commonwealth presented three witnesses as experts: Dr. Philip W. Luber, a psychologist and assistant medical director at Bridgewater; Dr. Joel Haycock, a psychologist and clinical director of the forensic ward at Bridgewater; and Dr. David D. Swenson, a court psychiatrist in Essex County.[2] All three had interviewed DelVerde, and the judge

---

[1] Pursuant to G. L. c. 123, § 16 (*b*), DelVerde was committed to Bridgewater in September, 1982.

[2] The judge noted that he also had received in evidence Dr. Luber's report dated March 18, 1986; Dr. Haycock's report dated February 10, 1986; and the reports of a Dr. William Nagler, dated December 2, 1980, and March 23, 1981. On appeal, DelVerde claims the judge was not entitled to use or rely on the doctors' reports because the reports were not marked as exhibits. We do not agree. The transcript discloses that the reports were present and were referred to by the witnesses, as well as both counsel, during the hearing. In addition, the docket entries disclose that the reports were filed

found that DelVerde "voluntarily and intelligently waived his rights under G. L. c. 233, § 20, with respect to any statements made by him to the [experts]." See *Commonwealth* v. *Lamb,* 365 Mass. 265, 270 (1974). DelVerde does not challenge this finding on appeal.

The judge correctly ruled that the Commonwealth bore the burden to prove beyond a reasonable doubt that (1) DelVerde is mentally ill; (2) discharge of DelVerde from a facility would create a likelihood of serious harm;[3] and (3) DelVerde is not a proper subject for commitment to any facility of the Department of Mental Health. G. L. c. 123, §§ 8 (*b*), 16 (*b*) (1986 ed.). *Commonwealth* v. *Nassar, supra* at 916. *Superintendent of Worcester State Hosp.* v. *Hagberg,* 374 Mass. 271, 276-277 (1978). We consider the three rulings seriatim.

1. *Mental illness.* "For purposes of involuntary commitment . . . 'mental illness' shall mean a substantial disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality or ability to meet the ordinary demands of life . . . ." 104 Code Mass. Regs. § 3.01(1)(a) (1986). *Commonwealth* v. *Nassar,*

---

with the court clerk and were part of the court papers before the judge. Thus, defense counsel was fully aware of the reports and the fact that the judge might rely on them. Nevertheless, DelVerde lodged no objection and made no motion that the reports not be considered. A party may not remain "mute as to a particular procedure, abiding the event of decision and, finding the decision unfavorable, attack[ ] that decision as procedurally defective." *Norway Cafe, Inc.* v. *Alcoholic Beverages Control Comm'n,* 7 Mass. App. Ct. 37, 39 (1979). Further, "[t]he theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review of the acts of the trial judge." *Kagan* v. *Levenson,* 334 Mass. 100, 106 (1956), quoting *Santa Maria* v. *Trotto,* 297 Mass. 442, 447 (1937). The better practice would have been to mark the reports as exhibits.

[3] The actual language of G. L. c. 123, § 8 (*b*), which applies to commitments to Bridgewater, requires the Commonwealth to prove that "*the failure to retain such person in strict custody* would create a likelihood of serious harm" (emphasis added). The standard for likelihood of serious harm cited by the judge (and cited by both parties in their briefs on appeal) is taken from G. L. c. 123, § 8 (*a*), and applies only to commitment to a facility of the Department of Mental Health. Application of the latter standard is not error, however, because the judge specifically found, pursuant to G. L. c. 123, §§ 8 (*b*) and 16 (*b*), that DelVerde is not a proper subject for commitment to any facility of the Department of Mental Health.

*supra* at 913 n.6. In addition, c. 123, § 1 (1986 ed.),[4] provides that a mentally retarded person may not be adjudged mentally ill "solely by virtue of his mental retardation." DelVerde contends that the finding that he is mentally ill is based solely on his retardation. We do not agree.

The three experts agreed that DelVerde suffers from an adjustment disorder with a depressed mood. What divided them was not whether DelVerde suffers from depression, as well as mental retardation, but the seriousness of his depression and its effect on his mental condition.[5] The judge could accept as credible the evidence that depression severely impaired DelVerde's limited judgment. He also could find that retardation, coupled with depression, rendered DelVerde unable to adapt to the stresses in his life and that, as a result, DelVerde's behavior was adversely affected. See *infra.* The fact that the experts were not unanimous is irrelevant. "[T]he law 'does not give the opinions of experts . . . the benefit of conclusiveness, even if there are no contrary opinions introduced at the trial.' " *Commonwealth* v. *Lunde,* 390 Mass. 42, 47 (1983), quoting *Commonwealth* v. *Smith,* 357 Mass. 168, 178 (1970). The evidence supports the judge's conclusion that DelVerde's depression,[6] coupled with his mental retardation, severely affected his behavior and mood and that, as a result, DelVerde's mental condition fell within the regulatory definition of "mental illness." 104 Code Mass. Regs. § 3.01(1)(a). There was no error.

2. *Likelihood of serious harm.* The evidence also supports the judge's ruling that the failure to maintain DelVerde in custody at Bridgewater would create a likelihood of serious

[4]The definition of "mentally retarded person" no longer appears in G. L. c. 123, § 1. Statute 1986, c. 599, §§ 38, 39, recodified c. 123 and inserted c. 123B. See G. L. c. 123B, § 1 (1986 ed.).

[5]On appeal, DelVerde stresses the fact that there was some evidence from one expert that DelVerde had some ability to adjust to his depression. The judge did not have to believe that testimony. We also note that the same witness stated that DelVerde's responses to stress were not inconsistent with those of some mentally ill individuals at Bridgewater.

[6]Reports filed with the court, see note 2, *supra,* also indicate that DelVerde had a history of periodic attacks of severe depression.

harm. The judge specifically found that DelVerde's release "would pose a substantial risk of harm to others." DelVerde claims there is no evidence to support the judge's finding of a likelihood of serious harm. We do not agree.

The judge relied on testimony that, if DelVerde were returned to the county house of correction, he "would behave in a violent and assaultive manner because of his limited ability to cope with stress." The finding is supported by testimony that, as late as January, 1986, while at the county house of correction, DelVerde spit on people, was physically abusive to others, banged his head against the wall, and bit a guard several times during a struggle.

DelVerde argues that the only evidence of dangerous assault-ive and violent behavior was the confession he made to police after his arrest on charges of rape and murder.[7] DelVerde asserts that it was error for the judge to consider his confession to the crimes. It is not clear, however, that the judge did consider the confession. The judge does not rely on the confession in his findings, and does not mention it as part of the documentary evidence before him. See note 2, *supra*.[8] Further, DelVerde's medical and social records indicate a continuing history of assaultive and violent behavior due to his inability to adjust to the stress of his life. In 1986 DelVerde appeared "out of control" and assaultive at the county house of correction. The evidence was sufficient to support the judge's ruling that

---

[7] Contrary to DelVerde's assertion that the confession was the only evi-dence of violent behavior, there was evidence in an early report that Del-Verde made an admission to an inmate at the county house of correction that "I killed a girl on River Street last night."

[8] Even if the judge considered the confession, there is no error. The confession had not been excluded by any ruling on DelVerde's motion to suppress. Further, it is not clear, as a matter of law, that DelVerde could not make a knowing and intelligent waiver of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). All of the witnesses said, and the judge specifically found, that DelVerde understood the analogous "Lamb warn-ings" he received on several occasions during psychiatric examinations. See *Commonwealth* v. *Lamb*, 365 Mass. 265 (1974). DelVerde does not claim otherwise. Finally, we note that the motion to suppress was not before the judge in the commitment proceeding and that he was not required to hold a separate hearing or to rule on a motion not before him.

failure to retain DelVerde in custody at Bridgewater would create a likelihood of serious harm to others.

3. *Commitment to Bridgewater State Hospital.* In their testimony, Haycock and Swenson recommended strongly that DelVerde be kept at Bridgewater and not be returned to the county house of correction. None of the experts testified to the specific issue whether DelVerde was a fit subject for commitment to a facility of the Department of Mental Health. Haycock's report of February, 1986, however, recommended that DelVerde be committed to Bridgewater rather than a facility of the Department of Mental Health. Dr. Nagler's earlier reports also recommended that DelVerde "requires the maximum security precautions of Bridgewater." Moreover, the judge noted that the charges of murder in the first degree and rape against DelVerde have not been dismissed and are still outstanding. The judge properly could conclude that Bridgewater was the only facility in the Commonwealth for a male defendant charged with serious assaultive crimes and who was found to be mentally ill.

*Order affirmed.*