Swan, J.
After a hearing upon a petition brought pursuant to G.L.c. 123, §§7 and 8 by BayRidge Hospital (“BayRidge”), the Lynn District Court ordered that Timothy Jackson (“Jackson”) be civilly committed for six months at BayRidge. Jackson has appealed that order on the grounds that he was committed on legally insufficient evidence, and that the trial court erroneously denied Jackson’s two motions to dismiss the petition on the grounds, respectively, that it was not timely filed and that it was not signed by an authorized person.
The commitment order was issued on April 24, 2008, and Jackson was discharged from the hospital on May 27, 2008, almost five months before the order’s expiration date. Jackson now being at liberty, his appeal of the order is moot. “Courts decline to hear moot cases because (a) only factually concrete disputes are capable of resolution through the adversary process, (b) it is feared that the parties will not adequately represent positions in which they no longer have a personal stake, (c) the adjudication of hypothetical disputes would encroach on the legislative domain, and (d) judicial economy requires that insubstantial controversies not be litigated.” Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298 (1975). “However, ‘[ijssues involving the commitment and treatment of mentally ill persons are generally considered matters of public importance’ and present ‘classic examples’ of issues that are capable of repetition, yet evading review”(citations omitted). Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 763 (2008). As the issues of legal sufficiency and timeliness are unique to this case and, thus, unlikely to be repeated, we decline to address them.[1] The issue of authorization, on the other hand, is one that may easily recur, with respect not only to BayRidge, but also to hospitals throughout the Commonwealth, especially large insti- *13 tutíons with subsidiary psychiatric units. Accordingly, we review the issue.
The petition for commitment was signed by “Beatrice Szeto, M D, BayRidge I” (“Dr. Szeto”). Her “immediate boss” is Barry Ginsberg (“Dr. Ginsberg”), the chief of psychiatry at BayRidge. Dr. Ginsberg’s “direct boss” in turn is the administrator of Northeast Hospital Corporation. There are three units at BayRidge, namely BayRidge I, BayRidge II, and the LAU. Dr. Szeto is the medical director of BayRidge I. She is “responsible for certain administrative duties on BayRidge I, to work with staff to insure that policies, environment, patient care at BayRidge I is competent and adequate.” She has the authority to change administrative policies affecting visitation (but not visitation hours), clinical care, and programs. She makes decisions about her “patients and other patients on the unit.”
General Laws c. 123, §7 (a) provides that the “superintendent of a facility may petition the district court... for the commitment to said facility and retention of any patient at said facility whom said superintendent determines that the failure to hospitalize would create a likelihood of serious harm by reason of mental illness.” The statute defines “superintendent” as “the superintendent or other head of a public or private facility,” and a “facility” as “a public or private facility for the care and treatment of mentally ill persons, except for the Bridgewater State Hospital.” G.L.c. 123, §1. The statute further provides that the Department of Mental Health is to “adopt regulations consistent with [G.L.c. 123] which establish procedures and the highest practicable professional standards for the reception, examination, treatment, restraint, transfer and discharge of mentally ill persons in departmental facilities. Said regulations shall be adaptable to changing conditions and to advances in methods of care and treatment of the mentally ill.” G.L.c. 123, §2. Pursuant to this charge, the Department has promulgated regulations that set forth the following definitions:
Facility shall mean a Department-operated hospital, community mental health center with inpatient unit, or psychiatric unit within a public health hospital; a Department-licensed psychiatric hospital; a Department-licensed psychiatric unit within a general hospital; or a secure intensive residential treatment program for adolescents that is either designated as a facility under the control of the Department or licensed by the Department.
Facility Director or Director of a Facility shall mean the superintendent or other head of a facility who is responsible for the admission, discharge, and treatment of patients in the facility, who may petition the district or juvenile court for commitment pursuant to M.G.L.c. 123; and who may take such other action as is authorized or required of the superintendent or other head of a facility pursuant to M.G.L.c. 123.
104 CMR 25.03.
BayRidge I is a “psychiatric unit within a general hospital,” i.e., Northeast Hospital Corporation, and is thus a “facility” within the meaning of the regulation and, by it, the statute.[2] Dr. Szeto is the medical director of the unit, “responsible for *14 certain administrative duties” at the unit and ensuring the competence and adequacy of “policies, environment, [and] patient care” at the unit, and makes decisions about both her patients and other patients at the unit. She heads the unit — the next person higher in the overall organization is the chief of psychiatry of the hospital itself, namely BayRidge.[3] While the record unfortunately lacks more detail on the doctor’s authority, it does make at least a minimal showing that she “is responsible for the admission, discharge, and treatment of patients in the facility,” 104 CMR 25.03, and that she is “the head of a public or private facility,” thereby meeting the statutory definition of “superintendent.” G.L.c. 123, §1.
Accordingly, we conclude that Dr. Szeto, a statutory “superintendent” of a “facility,” to wit, the unit known as BayRidge I, had the authority under G.L.c. 123, §7 (a) to sign the petition for commitment of Jackson “to said facility.” The trial court correctly denied Jackson’s motion to dismiss the petition.[4]
Appeal dismissed.
So ordered.

 The evidence, in particular, is completely unique to this case, and any review of it would have little or no precedential value. As to the timeliness of the petition under G.Lc. 123, §12, the trial court’s error resulted from a faulty facsimile transmission from BayRidge to the trial court. In entering its order, the trial court properly cautioned BayRidge in the future to follow up any fax with a confirmatory telephone call to the clerk’s office to assure timely filing. As the alternative for BayRidge is petition dismissal in these circumstances in subsequent cases, we presume that the procedure recommended by the trial court will be followed and that no further corrective action or comment will be necessary.

 There appears to be no dispute that BayRidge I is duly licensed by the Department of Mental Health.

 The petition itself names the petitioner as “Beatrice Szeto, M D, BayRidge I” and the facility as “BayRidge Hospital.” A table of organization is not part of the record. What appears from the record is that BayRidge I, a psychiatric unit, is a subsidiary of BayRidge, a psychiatric hospital, which in turn is a subsidiary of Northeast Hospital Corporation. At oral argument, counsel for BayRidge indicated that the appeal should correctly have named BayRidge I, as opposed to BayRidge, as the petitioner-appellee, that is, the unit rather than the hospital.

 Alleging inaccurate citations to the record, Jackson filed with this Division a motion to strike BayRidge’s brief. This Division is fully capable of discerning relevant facts from the record for itself. The motion is denied.