Coven, J.
Respondent M.B. was involuntarily admitted to McLean Hospital (“hospital”) on January 27,2012 pursuant to G.L.c. 123, §12. On January 30,2012, the hospital filed a G.L.c. 123, §§7-8 petition to commit M.B. involuntarily. Additionally, the hospital sought court approval pursuant to G.L.c. 123, §8B of a plan to treat M.B.’s mental illness with medication. A hearing was held on February 2, 2012. The court found that M.B. suffered from a mental illness and that failure to retain M.B. at the hospital would create a likelihood of serious harm. The court also determined that M.B. was incompetent to make medical decisions regarding the treatment of her mental illness; and that, based on its consideration of several factors,[1] M.B. would accept treatment if she were competent to make medical decisions. The court accordingly approved a treatment plan that included the use, if necessary, of antipsy-chotic medication.
On this appeal, M.B. argues that the court erred in (1) allowing, over M.B.’s objection, the expert for the hospital to testify during direct examination to inadmis *9 sible evidence that in part formed the basis for the opinion rendered; and (2) permitting testimony presented in the course of the commitment proceeding and privileged testimony to be used in the hearing on the proposed treatment plan.
1. As M.B. has been discharged from the hospital, we first must consider whether the issues raised in this case are moot. This Appellate Division has recently considered the issue of mootness in a similar case. In In Re: Commitment of K.R., 2012 Mass. App. Div.__ (No. 12-ADMS-10023, issued December 28, 2012), we determined, after review of the governing principles, that where the appellant had been discharged and the appeal concerned the sufficiency of the evidence, the appeal was moot because the sufficiency of the evidence was unique to that case. We declined, therefore, to exercise our discretion to address the merits of the moot appeal.
This case differs from KR. in that the evidentiary issues raised are not unique to this case and involve matters of public importance, particularly those involving respondents’ rights at commitment hearings.
2. We begin by considering M.B.’s objections to hearsay statements that the hospital’s medical expert incorporated into his testimony.[2] M.B. addresses four instances of improperly admitted testimony. We identify each in turn.
First, during direct examination, the hospital’s medical expert, M.B.’s treating psychiatrist, was asked what M.B. had stated concerning M.B.’s blood pressure. The doctor responded that he had “not specifically asked her,” and then began to state what others had told him M.B. said when asked about her hypertension. Before any statements of what others had said were introduced, counsel for M.B. objected on hearsay grounds. Counsel asserted that the expert would be “[t] estifying to what other people said.” The court ruled that the information was contained in M.B.’s medical charts, and permitted the expert to further testify. The testimony that followed was not responsive to the question. Rather, the testimony presented M.B. as avoiding questions posed by others concerning her hypertension by talking about cameras in her eyes, microchips in her head, radioactive poisoning that increased her blood pressure, having HIV, being abused by Nazis, and having personally killed the Kennedys. There was no motion to strike this evidence. Nor was there an objection at the hearing that the information was not contained in medical records or that these statements were themselves based on unreliable hearsay.
There was error in the admission of this evidence. It appears that the judge reasoned that because the information testified to was contained in medical records that would be independently admissible, the psychiatrist, an expert, could present this testimony. It is clear that the psychiatrist was not simply presenting his opinion through the question. The question concerned the psychiatrist’s discussions with M.B. about her hypertension. However, the issue of the admissibility of this evidence was not properly preserved.
*10 Second, when asked about M.B.’s risk of harm to others, the expert testified, based on “history, including family reports,” that M.B. had become increasingly threatening and that “charges have been brought against her by family members.” The court overruled an objection, based on “hearsay,” to these statements. The expert continued his testimony, informing the court that when allowed to remain in a psychotic state, M.B. would make verbal threats over the telephone to neighbors, some of whom had sought restraining orders. Following this disclosure, the subject of the direct examination changed. But before there was an answer to the question raising a new subject, the court asked the psychiatrist to whom the verbal threats were made. The expert responded that they were made to family members. Counsel for M.B. then objected on hearsay grounds and a lack of basis of personal knowledge. The court required the expert to state his basis of knowledge, and he informed the court that his testimony was based on speaking with the sister of M.B. He also disclosed what M.B.’s sister had told him. There was no further objection. Nor was there a request to strike the information.
The psychiatrist was asked for an opinion on the risk of harm M.B. presented to others. “[Ejxpert witnesses may base their opinions on (1) facts personally observed; (2) evidence already in the records or which the parties represent will be admitted during the course of the proceedings, assumed to be true in questions put to the expert witnesses; and (3) ‘facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion.’” Commonwealth v. Markvart, 437 Mass. 331, 337 (2002), quoting Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 531 (1986). See Mass. G. Evid. §703 (2012). And an expert providing an opinion on facts or data not in evidence may not disclose the underlying data or facts during direct examination, unless the court, in its discretion, “require [s] an initial disclosure of the underlying facts or data.” Department of Youth Servs., supra at 532, quoting Advisory Committee’s Note, Proposed Mass. R. Evid. 705.
As to the testimony preceding the first objection, there was no disclosure of facts or data. M.B.’s psychiatrist informed the court only of his opinion and the resources he considered in forming the opinion. As to charges having been brought against M.B. by her family members, the record does not support only the conclusion that this information was hearsay. M.B. herself may have disclosed this information. As to the second objection, its object was the concern of the psychiatrist, which was based in part on M.B. having threatened neighbors or family members over the telephone. The objection was untimely. Further, the objection did not alert the judge to a violation of the principles discussed in Department of Youth Servs. v. A Juvenile, supra. Finally, the judge, invited by the nature of the objection of M.B.’s counsel, called for a foundation, and the foundation itself then created a hearsay issue as to a prior response to which there had been no objection.
Third, the expert was asked of his personal knowledge whether M.B displayed any “risky behavior” in her group home setting prior to her hospital admission. The psychiatrist gave a response that was not based on his personal knowledge. He was then asked, without objection, for the basis of his testimony that M.B. had not been taking medication at the group home. The expert stated that it was based on a conversation he had with the director of the group home the evening prior to the hearing. Counsel for M.B. objected on the ground that that conversation was hearsay. As *11 with the second instance, any error was not properly preserved.
Finally, M.B. argues that the court erred in allowing to stand over objection an unresponsive answer to M.B.’s counsel question: “And she has been taking meals since she’s been; isn’t that right,” referring presumably to the hospital. The answer was as follows: “No one can argue that she’s not oriented and that she believes that Robert F. Kennedy isn’t in jail in Germany and trying to —.” An objection followed based on responsiveness, and the court allowed the answer as “part of [the psychiatrist’s] answer” to two prior questions on cross-examination as to the expert’s opinion regarding M.B.’s orientation. The court reasoned that the answer and the following additional response that she believed “Obama was killed three months ago” went to orientation because if she believed Kennedy was alive, she was not oriented. The answers concerned not M.B.’s dietary habits, but rather M.B.’s orientation to time, place, and person.
There is no doubt that the answer at issue was not responsive to the question asked. We find, however, that there was no error in these circumstances. The court’s statement that the response was “part of’ a prior question indicates that there was a tempo to the questioning and answers and the response must be viewed in this specified context.
3. The next issue raised by M.B. is the incorporation of testimony presented at the commitment stage into the G.L.c. 123, §8B substituted judgment hearing and the presentment of privileged communications during the hearing. Because the hospital contends that the issue was not properly preserved, it is necessary to examine how the issue developed at trial. We conclude that the objection made by counsel for M.B. at the hearing was limited. It did not go toward the introduction of all testimony developed at the commitment stage. Rather, the objection focused only on the admission of commitment testimony that concerned privileged communications between M.B. and her treating psychiatrist and any testimony that was to be developed in the substituted judgment stage that involved privileged communications. The objection was further limited to the issue of whether M.B. “knowingly” waived the privilege. The court rejected counsel’s concern that in order for the communications to be admissible, there must have been a knowing waiver. In context, the objection preserved the issue that we shall discuss.
Section 8B(h) of G.L.c. 123 is unambiguously clear in this respect. It states that
[a]ny privilege established [for communications to social workers] by [G.L. 112, §135] or [for communications to psychotherapists] by [G.L.c. 233, §20B], relating to confidential communications, shall not prohibit the filing of reports or affidavits, or the giving of testimony, pursuant to this section, for the purpose of obtaining treatment of a patient, provided that such patient has been informed prior to making such communications that they may be used for such purpose and has waived the privilege.
“‘[W]e are constrained to follow’ the plain language of a statute when its ‘language is plain and unambiguous,’ and its application would not lead to an ‘absurd result,’ or contravene the Legislature’s clear intent.” Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999), quoting from White v. City of Boston, 428 Mass. 250, 253 (1998). We look first to the statutory language because it is “the principal source of *12 insight into legislative purpose.” O’Sullivan v. Secretary of Human Servs., 402 Mass. 190, 194 (1988). We will not expand or limit the meaning of a statute unless it is required by the “object and plain meaning” of the statute. Rambert v. Commonwealth, 389 Mass. 771, 773 (1983).
We need not address in this case what state of mind beyond the required statutory knowledge is necessary in the context of a §8B hearing in order for there to be an effective waiver. It is enough in this case to conclude that whatever additional state of mind may be necessary, M.B. should have been informed prior to the communications that, in the words of the statute, her communications “may be used” “for the purpose of obtaining treatment.” Section 8B(h) of G.L.c. 123 unambiguously directs that M.B. should have been informed prior to her communications with her psychiatrist that her communications could be used “for the purpose of obtaining treatment” of her pursuant to §8B. That directive makes clear that, whatever other qualification may, or may not, be placed on the issue of waiver,[3] M.B. had to be informed for there to be a waiver, i.e., she had to have knowledge that her communications could be used for the purpose of seeking treatment. The evidence presented at the hearing falls short of establishing that knowledge.
M.B.’s treating psychiatrist testified that he informed M.B. that he would be going to court and that he would seek court authorization to treat M.B. with medication. That testimony is not the equivalent of evidence that M.B. was informed that her communications could be used to obtain court authorization. The psychiatrist made M.B. aware that court proceedings were being considered, but it does not follow that M.B. was made aware that her communications would be used as evidence. There was error. But because M.B. has been discharged, the issue of relief is moot. See Guardianship of Erma, 459 Mass. 801, 804 (2011) (termination of substituted judgment treatment order moots appeal).
Appeal dismissed.[4]
So ordered.

 The judge considered M.B.’s expressed preferences, her religious convictions, family concerns, the adverse side effects of the proposed medication, and M.B.’s prognosis with and without treatment. See Rogers v. Commissioner of the Dep’t of Mental Health, 390 Mass. 489, 505-507 (1983).

 The sister of M.B. also testified at the hearing on the commitment petition. In her brief, M.B. argues that her sister’s testimony concerning her diabetic and high blood pressure conditions were based on hearsay and were, therefore, inadmissible. The objection raised at the hearing was that the sister had no basis of knowledge and no foundation was laid for admission. The court asked for the development of a basis of knowledge. No further objection was raised after the basis was developed. We do not consider whether the testimony of the sister in this respect was error.

 General Laws c. 233, §20B, which covers privileged communications between a psychiatrist and a patient and the waiver and exceptions to the privilege, provides, in part, as follows: “If a patient is incompetent to exercise or waive such privilege, a guardian shall be appointed to act in his behalf under this section.” We make clear that our ruling in no way addresses whether in the context of a G.L.c. 123, §8B hearing, a guardian may sometimes be needed. Nor do we discuss whether a waiver may be inferred and in what circumstances. Additionally, we do not intimate any view as to whether the concept of waiver, as suggested in M.B.’s brief, involves the requirement that there exist an “intelligent[] waive [r],” and, if so, what the components of an intelligent waiver are.

 We decline to address M.B.’s remaining allegation of error in the court’s refusal to continue the hearing at her request. M.B. asked for the continuance to permit her expert to prepare for the hearing. After denying the request, the court proceeded with the hearing, but offered M.B.’s counsel the opportunity to present further evidence from M.B.’s expert a “few days” later. The record indicates that M.B. did not present additional expert evidence. In this context, we are unable to evaluate M.B.’s claim of error.