Singh, J.
Walden Behavioral Care, a private facility for the treatment and care of mentally ill persons, brought this petition, pursuant to G.Lc. 123, §§7, 8, to commit and retain KI. (“KI.”), a patient at its facility. At the outset of the hearing on the petition, KI. moved to exclude any evidence based on his own statements because they constituted patient-psychotherapist communications, which are privileged pursuant to G.Lc. 233, §20B. The court denied the motion and heard testimony from the attending psychiatrist, the only witness presented. The psychiatrist testified that KI. had repeatedly indicated that voices were telling him to kill himself, that he intended to do so by overdosing on oxycodone that he had in his apartment, and that he wanted to donate his organs after he was dead. The psychiatrist opined that KI. was mentally ill with schizophrenia, paranoid type, and that he was suicidal. Upon a finding that failure to retain him at the facility would create a likelihood of serious harm and that there was no less restrictive alternative, the court committed KI. to Walden Behavioral Care (‘Walden”) for up to six months.[1]
On appeal, KI. contends that the court erred in allowing privileged patient-psychotherapist communications to be used as the basis for his commitment because he had not been warned that his statements could be used in this manner and he had not otherwise waived the privilege. In opposition, Walden argues that the privilege does not apply in the circumstances presented. Thus, the issue raised by this appeal is whether, in a proceeding to commit and retain an individual in a hospital because of a likelihood of serious harm created by the individual’s mental illness, G.L.c. 123, §§7, 8, the individual may assert the patient-psychotherapist privilege, G.Lc. 233, §20B, thereby preventing the introduction of patient-psychotherapist communications into evidence at such proceeding. As the issue involves the intersection of two statutes, we begin with an examination of each.
*2 1. The Patient-Psychotherapist Privilege under G.L.c. 233, §20B. Although many would regard communications with their doctors to be confidential, “[n]o general physician-patient privilege exists.” Usen v. Usen, 359 Mass. 453, 456 (1971), quoting Matter of Pappas, 358 Mass. 604, 607 n.4 (1978). In 1968, the Legislature created a privilege with respect to certain communications between a patient and a psychotherapist.[2] Id. It is an evidentiary privilege applicable to certain proceedings; it does not mandate confidentiality or prohibit disclosure in other settings. Commonwealth v. Brandwein, 435 Mass. 623, 628 (2002). As relevant here, the statutory privilege provides that:
in any court proceeding and in any proceeding preliminary thereto ... a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient’s mental or emotional condition.
G.L.c. 233, §20B. The statute further provides that the privilege does not apply in certain enumerated circumstances, only two of which are potentially relevant here. According to exception (a), the privilege does not apply in the circumstance where
a psychotherapist, in the course of his diagnosis or treatment of the patient, determines that the patient is in need of treatment in a hospital for mental or emotional illness or that there is a threat of imminently dangerous activity by the patient against himself or another person, and on the basis of such determination discloses such communication either [1] for the purpose of placing or retaining the patient in the hospital... or [2] placing the patient under arrest or under the supervision of law enforcement authorities.
G.L.c. 233, §20B (a). Where the communication is disclosed “for the purpose of placing or retaining the patient in the hospital,” the patient-psychotherapist privilege will apply “after the patient is in such hospital.” Id. According to exception (b), the privilege does not apply in the circumstance where
a judge finds that the patient, after having been informed that the communications would not be privileged, has made communications to a psychotherapist in the course of a psychiatric examination ordered by the court.
G.L.c. 233, §20B(&). If a patient has communicated with a psychotherapist after having been informed that the communications would not be privileged, a judge must ensure that such waiver of the privilege was knowing and voluntary. Matter of Laura *3 L., 54 Mass. App. Ct. 853, 860 (2002). Even so, evidence based on such communications is “admissible only on issues involving the patient’s mental or emotional condition but not as a confession or admission of guilt.” G.L.c. 233, §20B (b).
Unless a communication falls under one of the enumerated exceptions,[3] the privilege applies to allow a patient to prevent disclosure of the communication in a court proceeding or in any proceeding preliminary to such court proceeding.
2. Involuntary Civil Commitment under G.L.c. 123, §§7, 8. Section 7(a) of G.L.c. 123 allows a facility for the care and treatment of mentally ill persons to petition the court for the commitment and retention of any patient at its facility if it determines that a failure to hospitalize such patient would create a likelihood of serious harm by reason of the patient’s mental illness. The court hearing on the petition must take place within five days, unless the patient requests a continuance. G.L.c. 123, §7(c). The patient is entitled to representation by counsel. G.L.c. 123, §5.
After hearing, the court may issue an order of commitment only upon a finding, beyond a reasonable doubt, that (1) the patient is, in fact, mentally ill, G.L.c. 123, §8 (a), in the sense that he is suffering from a “substantial disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality or ability to meet the ordinary demands of life,” 104 CMR §27.05 (1); and (2) discharge of the patient would create a likelihood of serious harm in the sense that he presents a substantial risk of physical harm to himself or others or a very substantial risk of physical impairment or injury to himself. G.L.C. 123, §8(a); G.L.c. 123, §1.
Commitment is not authorized unless there is a showing of an “imminent danger of harm.” Acting Superintendent of Bournewood Hosp. v. Baker, 431 Mass. 101, 105 (2000), quoting Lessard v. Schmidt, 349 F. Supp. 1078, 1093 (E.D. Wis. 1972). The order of commitment is valid for six months. G.L.c. 123, §8(d).
3. Interplay between Privilege and Civil Commitment Statutes. It is well established that a statute must be interpreted “according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.” Baker, supra at 104, quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934). “The primary source of insight into the intent of the Legislature is the language of the statute.’ International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). If the language of the statute is unambiguous, our function is to enforce the statute according to its terms.” Reading Coop. Bank v. Suffolk *4 Constr. Co., 464 Mass. 543, 547-548 (2013). With respect to G.L.c. 233, §20B, the statute establishes a testimonial privilege, an exception to the general duty imposed on all people to testify and, therefore, must be strictly construed. Commonwealth v. Oliveira, 438 Mass. 325, 330 (2002). This Appellate Division is “not free to water down the legislative policy embodied in the statute by loose construction.” Usen, supra at 457.
4. Exception (b) to the Privilege. A plain reading of the statutes indicates that G.L.c. 233, §20B(&), allowing patient-psychotherapist communications to be admitted only if they were preceded by a warning regarding the lack of privilege, does not apply to civil commitment hearings under G.L.c. 123, §§7,8. By its terms, exception (6) to the patient-psychotherapist privilege applies only to communications made “in the course of a psychiatric examination ordered by the court.” G.L.c. 233, §20B (b). The warning required in exception (b) has come to be known as a “Lamb warning.” See Commonwealth v. Mercado, 452 Mass. 662, 665 n.5 (2008), citing Commonwealth v. Lamb, 365 Mass. 265 (1974) (referencing right to Lamb warning in case of court-ordered examination). Although Lamb warnings have been analogized to Miranda warnings, see Commonwealth v. DelVerde, 401 Mass. 447, 452 n.8 (1988), Miranda warnings are constitutionally required while Lamb warnings are a purely statutory construct. See Commonwealth v. Morais, 431 Mass. 380, 382-383 (2000). As such, the plain language of the statute limits its application to communications made in the context of an examination ordered by the court. Given that the patient-psychotherapist communications at issue in proceedings under G.L.c. 123, §§7, 8 are not made in the course of psychiatric examinations ordered by the court, exception (b) has no application to civil commitment proceedings.
Relying on Department of Youth Servs. v. A Juvenile, 398 Mass. 516 (1986), K.I. argues that this exception should be expanded to apply to civil commitment proceedings, whether or not the communications took place during a court-ordered examination. In the case relied on, the Department of Youth Services (“Department”) sought to detain a juvenile in its custody beyond his eighteenth birthday. Ld. at 518. In anticipation of a court proceeding necessary to extend the juvenile’s commitment, the Department directed a psychiatrist to interview the juvenile. Id. at 520. Because the juvenile was residing in a secure facility run by the Department, it was able to obtain a psychiatric examination of the juvenile without seeking court permission. Id. at 520 & n.4. The Department later argued that the juvenile was not entitled to warnings regarding the nature of his interview with the psychiatrist for the reasons that exception (b) required warnings only for court-ordered examinations, and the Department’s examination had not been ordered by any court. Id. at 526. The Supreme Judicial Court rejected the argument as “anomalous,” noting that “[t]he requirement of warnings is not a matter of prosecutorial discretion.” Id. Because the psychiatric examination was sought by the prosecution for the specific purpose of gathering evidence to be used in a court proceeding to further detain the juvenile, the Commonwealth could not circumvent the requirements of G.L.c. 233, §20B(6) simply by failing to seek court permission for the evaluation. Id. Thus, the Court did not expand the reach of exception (b); rather, it ensured that the Commonwealth would not be able to avoid its requirements.
Although K.I. urges a comparison between a juvenile in a detention center awaiting a commitment extension hearing and a patient in a hospital awaiting a civil com *5 mitment hearing, this Division is not “at liberty to substitute its judgment for that of the Legislature by expanding on a statutorily defined exception to the privilege.” Petition of Catholic Charitable Bur. of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption, 392 Mass. 738, 742 (1984) (where exception (e) to patient-psychotherapist privilege applied only to “child custody” proceedings, court declined to expand exception to include proceedings to dispense with consent to adoption, even though both proceedings concerned issue of individual’s suitability for child care). Although we discern no ambiguity in the language of exception (6), see Hashimi v. Kalil, 388 Mass. 607, 610 (1983) (no need to resort to extrinsic aids to interpretation where language of statute is clear), we note that the policy considerations behind exception (b) are not implicated in civil commitment proceedings.
As the Supreme Judicial Court has held, the policy of exception (b) is “to permit a court to utilize expert psychiatric evidence by ordering an examination,” Lamb, supra at 269, which takes place “in anticipation of a future proceeding” in which the defendant’s mental state will be at issue. Commonwealth v. Seabrooks, 433 Mass. 439, 450-451 (2001). In Seabrooks, the defendant was in jail pending murder charges. Id. at 446. At the request of jail officials, a psychologist conducted a series of examinations of the defendant in order to determine whether he was suicidal and required hospitalization. Id. The Court held that exception (b) to the patient-psychotherapist privilege did not apply because the examinations were not ordered by the court or sought by the prosecution and they were not conducted in anticipation of a future proceeding at which the defendant’s mental state would be at issue. Id. at 450-451. Rather, they were conducted to determine whether the defendant was at imminent risk of harm. Id. at 451.
Further, exception (b) has no application to a civil commitment hearing where the patient-psychotherapist communications take place in the context of hospital treatment; they do not take place in the context of a court-ordered examination. The purpose of the patient-psychotherapist communications presented in a civil commitment hearing is to provide treatment to the patient; it is not to gather evidence to present in court. Moreover, in a civil commitment hearing, the patient-psychotherapist communications do not take place in anticipation of any future proceeding.[4] *6 Thus, exception (b) does not apply to civil commitment proceedings under G.L.c. 123, §§7, 8, and therefore Lamb warnings are not required as a precondition to admissibility of patient-psychotherapist communications at such proceedings.
5. Exception (a) to Privilege. Our reading of exception (a) to the patient-psychotherapist privilege, in conjunction with the civil commitment statute, leads us to the conclusion that the privilege does not apply to civil commitment proceedings under G.L.c. 123, §§7, 8. Exception (a) appears to mirror the language of civil commitment. After all, civil commitment proceedings are initiated after a psychotherapist, in the course of his diagnosis or treatment, determines that failure to hospitalize a patient would present a likelihood of serious harm due to the patient’s mental illness. Compare G.L.c. 123, §7(a), with G.L.c. 233, §20B(a). Additionally, disclosure of patient-psychotherapist communications in those proceedings is made for the purpose of committing and retaining the patient in the hospital, at a time when the patient presents an imminent danger of harm. Compare G.L.c. 123, §7 (a), with G.L.c. 233, §20B(o). Once the patient is committed to the hospital and the imminent danger of harm is thereby ameliorated, the patient is entitled to enjoy once again the benefit of the privilege. Compare G.L.c. 123, §8B(b) and (h), with G.L.c. 233, §20B(«). The civil commitment proceeding then would seem to be the precise scenario contemplated by exception (a) to the patient-psychotherapist privilege in G.L.c. 233, §20B.
Nevertheless, some ambiguity arises from language in exception (a), which indicates that, where a psychotherapist discloses a communication with a patient “for the purpose of placing or retaining the patient in such hospital... the provisions of this section shall continue in effect after the patient is in said hospital.” A literal reading of the provision makes no sense; in any case in which a psychotherapist seeks to “retain” a patient in a hospital, the patient will, by definition, already be in the hospital. If the privilege applies simply because the patient is “in said hospital,” then exception (a) would never apply to a situation where a psychotherapist seeks to retain a patient in a hospital. Because we cannot interpret the language to be self-nullifying, we look to Legislative intent to determine the proper meaning. See Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 784 n.13 (2008) (statute is to be construed to give effect to all of its provisions so no part will be inoperative).
According to the Supreme Judicial Court, it was the Legislature’s intention “to dispense with the privilege when there is an imminent threat that a person who should be in custody will instead be at large.” Lamb, supra at 268. The Court opined that exception (a) was “intended to apply to a situation in which the patient is not institutionalized or is about to be discharged from an institution.” Id. When a hospital petitions for civil commitment of one of its patients under G.L.c. 123, §§7, 8, it is doing so precisely because there is an imminent threat that a person who should be in custody will instead be at large. The patient should be in the custody of the hospital because he otherwise poses a likelihood of serious harm to himself or to others due to his mental illness. See G.L.c. 123, §7(a) (civil commitment petition requires determination that failure to hospitalize would create likelihood of serious harm). Additionally, there is an imminent threat that the patient will be at large because he is about to be discharged from the hospital. Baker, supra at 105 (hospital unable to file for civil commitment unless patient has given notice of intention to leave, thereby creating imminency of discharge). Civil commitment proceedings therefore fit *7 squarely within the legislative intent behind exception (a) to the patient-psychotherapist privilege.
Nevertheless, K.I. contends that exception (a) was instead meant to apply only to court hearings on petitions under G.L.c. 123, §12. Section 12 of G.L.c. 123 also deals with involuntary hospitalization of individuals posing risk of harm by reason of mental illness, but is limited to a commitment period not to exceed three days. See Leavitt v. McLean Hosp. Corp., 28 Mass. App. Ct. 598, 600 (1990) (involuntary hospitalization under G.L.c. 123, §12 referred to as “pink paper”). Generally, the statute provides that certain mental health professionals and police officers may apply for the restraint and transport to a hospital of individuals believed to be dangerous by reason of mental illness. G.L.c. 123, §12(a). Upon arrival at the hospital, the individual must be examined by a physician, specifically designated for the purpose, to determine the appropriateness of the hospitalization; if deemed appropriate, the patient may be retained at the hospital for up to three days. G.L.c. 123, §12 (b). The hospital may not retain the patient against his will beyond the three days, unless it petitions for continued commitment under G.L.c. 123, §§7,8.[5] See G.L.c. 123, §12 (d). See generally Magrini, supra at 778-781 (overview of statutory scheme for temporary civil commitment). Because this type of involuntary hospitalization involves no court proceeding, the patient-psychotherapist privilege is not implicated. See Brandwein, supra at 628-629 (patient-psychotherapist privilege is evidentiary privilege, only applicable to certain proceedings).
The statute also provides an avenue for any person to apply for the restraint and transport to a hospital of any other individual believed to be dangerous by reason of mental illness. G.L.c. 123, §12 (e). This application must be made to a court, which may issue a warrant of apprehension for the individual. Id. Upon apprehension, the individual is brought to court, provided with counsel, and examined by a mental health professional appointed by the court. Id. If the court-appointed examiner reports that failure to hospitalize the individual would create a likelihood of serious harm by reason of mental illness, then the court may order the individual committed to the hospital for a period not to exceed three days. Id. Because these patient-psychotherapist communications take place within court-ordered examinations, they fall within exception (b) of the patient-psychotherapist privilege. See Matter of Laura L., supra at 859-860 (court-ordered examination, triggered by §12 (e) petition, required Lamb warning as the Lamb Court placed “all court-ordered examinations under the ambit of G.L.c. 233, §20B (&)”)•
No other application for exception (a) to the patient-psychotherapist privilege has been suggested to us; yet we cannot interpret exception (a) to have no value. See Magrini, supra at 784 n.13 (all provisions of statute must be given effect). If we view the language in G.L.c. 233, §20B (a) indicating that the privilege will apply after the patient is “in said hospital” to mean after the patient is “committed to said hospital,” *8 then the ambiguity concerning its application to civil commitment proceedings is resolved. In all other respects, the language and policy behind exception (a) is consistent with its application to civil commitment proceedings. Essentially, exception (a) deals with a psychotherapist faced with a dangerous patient, see Commonwealth v. Brandwein, supra at 628 (referring to G.L.c. 233, §20B(a) as the “dangerous patient exception”), and consistent with common law, abrogates the privilege in the circumstances of that danger. See Alberts v. Devine, 395 Mass. 59, 60 (1985) (establishing common law rule that physician owes duty of nondisclosure of confidential information concerning patient, “unless faced with a serious danger to the patient or to others”).
This interpretation is also consistent with other aspects of the statutory scheme regarding mental health proceedings. For example, a petition to commit and retain a patient, pursuant to G.L.c. 123, §§7, 8, is typically accompanied by a petition to administer antipsychotic medications and other treatment to the patient, pursuant to G.L.c. 123, §8B. The petition to administer medication and other treatment, however, may not be considered until an order of commitment has first issued. G.L.c. 123, §8B(b). In this subsequent §8B proceeding, evidence based on patient-psychotherapist communications is explicitly allowed to be admitted into evidence, provided that the patient was informed in advance that such communications would be used for such purpose and has waived the privilege. G.L.c. 123, §8B(h). See In Re: Commitment of M.B., 2013 Mass. App. Div. 8, 11-12. Indeed, the fact that the Legislature explicitly provided for application of the privilege only after civil commitment but made no similar provision during the civil commitment proceeding itself is further indication that it did not intend for the privilege to apply at such proceeding. See Alliance to Protect Nantucket Sound, Inc. v. Department of Pub. Utils., 461 Mass. 166, 178 n.22 (2011) (if Legislature intended particular requirement in utility regulation, it could have stated so explicitly, as it had done in other statutes regulating utility companies).
We are mindful of the significant consequences of civil commitment proceedings and the desire to ensure adequate procedural safeguards, see Kirk v. Commonwealth, 459 Mass. 67, 72 (2011) (reviewing protections afforded to patients undergoing civil commitment proceedings); however, any interpretation that would preclude patient-psychotherapist communications from evidence at a civil commitment hearing absent a knowing and intelligent waiver of the patient-psychotherapist privilege, would not only fail to effectuate the plain language of the relevant statutes, but would also contravene the Legislative intent and, in fact, produce an absurd result. See City of Worcester v. College Hill Props., LLC, 465 Mass. 134, 138 (2013) (statute should not be construed such that its application would lead to absurd result).
As a practical matter, the issue of the assertion or waiver of privilege would rarely be taken up prior to the five-day deadline for the hearing. If there were a question as to the patient’s competency to assert or waive the privilege, which there often would be given the nature of the proceedings, then a guardian would have to be appointed. If the patient objected to a postponement of the hearing for the purpose of appointment of a guardian, then the patient would have to be released if five days had elapsed since the filing of the petition. See Kirk, supra at 72 (time line within which to bring patient to hearing strictly construed). Alternatively, if the proceedings were *9 considered to have validly commenced and simply continued for further hearing, then the patient would be detained for yet a longer period of time pending resolution of the privilege issue. In either case, the result is untenable. In the former, a patient alleged to pose a danger to himself or others would be released into the community without any hearing. In the latter, a patient involuntarily detained at hospital would have to wait an extended period of time before there could be any determination as to the propriety of his detention, contrary to the clear intent of the Legislature to provide a speedy hearing. See Hashimi, supra at 609.
Even if competency were not at issue and the patient simply asserted the privilege, the result would be unacceptable. Often, patient-psychotherapist communications are the only evidence bearing on the issues at a civil commitment hearing. Whether due to alienation that may result from mental illness or simply due to the short time frame involved in civil commitment proceedings, there are frequently no family members or acquaintances available to participate. To preclude the most critical evidence bearing on the issues at a civil commitment hearing that derived from patient-psychotherapist communications, and thereby allow the release of a potentially dangerous person into the community without appropriate treatment, would defeat the purpose of the proceeding. See 53 Am. Jur. 2d Mentally Impaired Persons §49 (2006 & Supp. 2013) (“general view is that the physician-patient privilege is not applicable to commitment proceedings” because the purpose of commitment statutes — care and treatment — would be undermined if the psychotherapist’s testimony was excluded).
This case is a perfect illustration. The only evidence at the hearing was based on patient-psychotherapist communications. Those communications allowed the psychotherapist to opine that K.I. was suffering from schizophrenia, paranoid type, and was suicidal with a plan to overdose on drugs that he had in his apartment. If Ki.’s assertion of the privilege had been accepted, he would have been required to be released as there would have been insufficient evidence for commitment. Upon release and without appropriate treatment, urged on by the compelling voices in his head, K.I. would have been free to carry out his plan. We will not interpret these statutes in a way that produces this absurd result, particularly where a common sense reading of the statutes, indicating that the patient-psychotherapist privilege does not apply to civil commitment proceedings, produces a more “effectual and harmonious” result. See Lamb, supra at 269.
The order of commitment is affirmed.
So ordered.

 The six-month commitment period has expired. Although this appeal may be considered moot, an argument not advanced by either party, we proceed to the merits in view of the public importance of the issue involved. See In Re: Commitment of M.B., 2013 Mass. App. Div. 8, 9 (Appellate Division exercised discretion to consider moot appeal where case involved respondents’ rights at commitment hearings, a matter of public importance). We take the facts from the agreed statement of the case submitted by the parties pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8B.

 Under the statute, a “psychotherapist” is defined as “a person licensed to practice medicine, who devotes a substantial portion of his time to the practice of psychiatry.” G.L.c. 233, §20B. The statute goes on to include in the definition psychologists and nurses who have attained certain educational and licensure requirements.

 The other exceptions are: (c) when a patient introduces his own mental condition as an element of his claim or defense; (d) when a party through a deceased patient seeks to introduce the mental condition of the decedent as an element of his claim or defense; (e) when the communication bears upon a patient’s ability to provide suitable care for a child in a proceeding involving child custody, adoption or dispensing with consent to adoption; if) when a patient brings a claim against his psychotherapist and in any malpractice, criminal or license revocation proceeding where the communication is relevant to the claim or defense of the psychotherapist. G.L.c. 233, §2OB(c)-(0.

 Indeed, because no future proceeding is anticipated, it is unclear when a psychotherapist would be expected to give a Lamb warning if the examination is not court-ordered. Any psychotherapist at any time may have a communication with a patient that gives rise to a petition for civil commitment. Indeed, a patient may unexpectedly communicate a threat against a third party during therapy. In that case, G.L.c. 123, §36B protects the psychotherapist from liability as long as he takes “reasonable precautions,” which include instituting proceedings for involuntary hospitalization. See G.L.c. 123, §1. It would make no sense to provide commitment as a reasonable precaution if the professional could not disclose the communication at the commitment hearing because the professional had not given a Lamb warning prior to the unexpected disclosure. It may be argued, then, that every psychotherapist should give a Lamb warning to every patient as a matter of course. While the merits of such a proposal may be debated, we are dealing here only with the scope of a statutory privilege, G.L.c. 233, §20B; our task is strictly to interpret that statute.

 The record reflects that K.I. was brought into Walden through the G.L.c. 123, §12 (a) petition of a physician who indicated that K.I. was experiencing auditory hallucinations and attempting to kill himself by running into traffic. Within two hours of admission, K.I. was examined by a designated physician who authorized his three-day commitment. It was within those three days that Walden filed its petition for involuntary commitment under G.L.c. 123, §§7, 8.