Welch, J.
The appellant, L.C., has appealed his November 21, 2013 commitment to Bridgewater State Hospital (“BSH” or “hospital”) pursuant to G.L.c. 123, §§7, 8. As grounds for the appeal, L.C. asserts there was insufficient evidence to warrant a commitment to the “strict security” of BSH and his commitment should have been to a Department of Mental Health (“DMH”) facility. Notwithstanding a well-developed record reflecting days of trial with multiple experts, we are prohibited from addressing the merits of the case as the appellant failed to perfect the appeal in a timely manner, rendering the appeal moot.
LC.’s original commitment to BSH, on May 25,2009, was pursuant to a jury verdict finding L.C. not guilty by reason of mental illness in the stabbing death of his mother. G.L.c. 123, §16 (b). Subsequent to the original commitment, there were yearly commitment hearings wherein L.C. continued to be held and treated for his mental illness at BSH.[1] G.L.c. 123, §16(c). On April 17,2013, a petition for involuntary commitment was filed by the medical director of BSH.[2] On this occasion, L.C. sought to challenge the petition on the issue of whether his commitment should be to BSH or a DMH facility.[3]
An individual held at BSH has the right to challenge his commitment to BSH on four grounds. These grounds are, first, that he is not mentally ill; second, that his discharge would not create a likelihood of serious harm; third, that he is a proper subject for commitment to any facility of the DMH; and fourth, that failure to retain him in strict custody at BSH would not create a likelihood of serious harm. G.L.c. 123, §8. L.C. does not challenge the first two criteria for commitment, but contests whether BSH has proved that he is not a proper person for commitment to a DMH *99 facility and that failure to retain him in strict security at BSH would create a likelihood of serious harm.
Both the hospital and L.C. presented expert testimony on all issues but most notably the contested issue of whether L.C. should be treated for his mental illness at BSH or whether a DMH hospital would be appropriate (most likely the locked unit in the Worcester Recovery Center). The bulk of the testimony addressed L.C.’s treatment, behavior while at BSH, his mental processes, and how these factors were relevant to whether L.C. should be placed for continued treatment at BSH or DMH. Subsequent to three days of hearings, on November 21,2013, the trial judge made written findings to commit L.C. to BSH. The term of the commitment was for one year. Therefore, the appellant had one year from the date of the finding to perfect the appeal and have the matter heard or a new hearing would be held and the individual would be held pursuant to the new order (which is what occurred in the present case).
In order to determine whether the matter was capable of being heard within the one-year time frame, a review of the trial and appellate dockets is necessary.[4] On December 9,2013, a request was made for the recording of the hearings and a notice of appeal was docketed. On February 7,2014, transcript portions were designated by the appellant and notice was provided to the transcriber. On February 28, 2014, the appeal on the record of proceedings was transmitted to the Appellate Division. Dist./ Mun. Cts. R. A. D. A., Rules 8C(g) and 9. On April 8,2014, the trial court’s transmittal of the Rule 8C appeal to the Appellate Division was dismissed as premature as the transcript had yet to be received in the trial court. On April 17,2014, the transcript was received by the trial court. On May 7, 2014, the appeal on the record of proceedings was again transmitted to the Appellate Division, which was received on May 12,2014. On July 7,2014, L.C. filed in the trial court a motion for docket entries and copy of an exhibit, which motion was allowed on July 8,2014. At this stage, the docket entries terminate for the Brockton District Court We turn to the docket entries in the Appellate Division to review the progress of the case and the reasons the appeal was not heard within one year of the commitment decision of November 21,2013.
The Appellate Division docket reveals delays credited to both parties and no action taken by L.C. to schedule the hearing prior to his recommitment. On June 2, 2014, notice was provided to the parties of the briefing schedule pursuant to Rule 10. On July 2,2014, L.C. requested a seven-day extension to file his brief, which was allowed. On July 24,2014, BSH, with the assent of L.C., filed a motion to extend time to August 22,2014 to file its brief. The motion was allowed on July 30,2014. On August 22,2014, BSH filed its brief. On September 17, 2014, the Appellate Division docketed L.C.’s reply brief with a certificate of service date stamped “Received-Sep 10 2014 - Appeals Court” along with a motion to extend time to file reply brief. On July 23,2014, LC.’s motion to extend time for filing of the reply brief was allowed. Subsequent to LC.’s second extension and the date of the recommitment of November 21,2014, L.C. filed no further pleadings to seek an expedited hearing. On December 4, 2014, subsequent to the recommitment date, the matter was scheduled for hearing on January 9, 2015. On December 22,2014, BSH’s motion to dismiss appeal was docketed, and on *100 December 26,2014, L.C. responded. On December 31,2014, the parties were notified that the motion to dismiss filed by BSH would be heard on January 9,2015, the same day as what was to be the hearing on L.C.’s challenge to his commitment to BSH.
LC.’s appellate counsel, who was also trial counsel, was well aware of the need to have a hearing on the matter prior to the yearly recommitment hearing. No steps were taken to ensure a timely hearing. An appellant may move for an expedited hearing pursuant to Rule 2 of the Dist/Mun. Cts. R. A. D. A.[5] As a result of L.C.’s inaction, the matter became moot as L.C. voluntarily committed himself and was held pursuant to a new order and not the order before us. As a practical matter, any opinion we would render would have no effect on LC.’s status as he is held pursuant to a separate voluntary commitment. See Scheibel v. Cohen, 2004 Mass. App. Div. 153, 154 (finding that respondent-appellant had agreed to voluntarily commit himself after commitment under appeal and therefore did not have “personal stake” in outcome of case).
L.C. argues that the appeal should not be dismissed as moot as the matter could not be heard within the one-year time frame and is capable of repetition. It is within the court’s discretion to decide issues that are moot where the question is (1) unlikely to obtain appellate review before the question would again be moot, (2) one of public importance, and (3) very likely to arise again in similar circumstances. Acting Superintendent of Bournewood Hosp. v. Baker, 431 Mass. 101, 103 (2000); Scheibel, supra at 153. “[I]ssues which involve the rights of the mentally ill are classic examples of issues that are ‘capable of repetition, yet evading review.’” Guardianship of Doe, 391 Mass. 614, 618 (1984), quoting Hashimi v. Kalil, 388 Mass. 607, 609 (1983). Questions involving the commitment and treatment of mentally ill persons are generally considered matters of public importance. Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 782 (2008).
Based upon the above language, one could reasonably conclude that no case involving issues of mental illness would ever be rendered moot; however, such is not the case. Referenced in L.C.’s opposition to BSH’s motion to dismiss, and of similar moment, is In Re: Commitment of K.R., 2012 Mass. App. Div. 229, where the issue deemed moot was the respondents challenge to the sufficiency of the evidence in his commitment proceeding. Id. (“The particular question raised by this appeal, the legal sufficiency of evidence, is necessarily unique to this case, unlikely to arise in similar circumstances, and would have little or no precedential value.”). Although L.C. is correct in stating that case law defining the term “strict security” would have *101 precedential value, it would have value only in relation to the contested, unique, and specific facts as they pertain to L.C., individually. The issue in such hearings as L.C.’s is the inner workings of a diseased mind and whether a Department of Corrections setting or a DMH hospital is the appropriate setting for treatment. It is true that any analysis would discuss the factors we would consider in determining the issue of strict security (treatment requirements, danger to seif or others, etc.); however, the context is specific to the patient, and the evidence to support the legal finding is unique to L.C. In BayRidge Hasp. v. Jackson, 2010 Mass. App. Div. 12, the Appellate Division declined to address the issue of the legal sufficiency of the evidence for commitment, but did address the narrow issue of the authority of an individual to file a petition on behalf of the hospital. Id. at 12-13. Other examples of issues that were decided, though the case was moot, include Taunton State Hosp. v. Carrara, 2000 Mass. App. Div. 274 (limited issue on appeal was whether court exceeded its authority in ordering that appellant be escorted while on grounds of Taunton State Hospital), Superintendent of Worcester State Hosp. v. Hagberg, 374 Mass. 271 (1978) (repeatable issue was standard of proof in hearing for commitment under G.L.c. 123, §§7, 8), and, as referenced in L.C.’s opposition, In Re: Commitment ofM.B., 2013 Mass. App. Div. 8 (issues capable of repeating concerned admission of hearsay and other narrow evidentiary issues). As L.C.’s appeal is moot and does not fall under the narrow exception of being capable of repetition yet escaping review, the appeal is dismissed.
Appeal dismissed.

 When an individual has been found not guilty by reason of mental illness and a petition to commit has been filed, a hearing is held in accordance with G.L.c. 123, §§7, 8. The initial commitment is valid for six months. After this initial six-month commitment, a person may be committed for additional one-year periods under the provisions of G.L.c. 123, §§7 and 8. G.L.c. 123, §16.

 The petition for commitment was filed pursuant to G.L.c. 123, §§16(c) and 8(b). Subsequent to the filing of the initial petition, all subsequent hearings on the petition were to proceed in accordance with G.L.c. 123, §§7 and 8.

 Although one of the defense experts opined that L.C. was no longer mentally ill, as defined by the statute, due to his taking medication and his symptoms subsiding, L.C. does not contest he is mentally ill or his need to continue taking medication.

 L.C. argued in his brief and at oral argument that due to the fact that a new hearing must be held every year, the appeal was incapable of being heard within the one-year period. As will be seen later in the opinion, the argument is without merit.

 Rule 2 provides:
In the interest of expediting decision, or for other good cause shown, the Appellate Division may, except as otherwise provided in Rules 4(c) and 14(b), suspend the requirements or provisions of any of these rules in a particular case on application of a parly or on its own motion and may order proceedings in accordance with its direction. Such a suspension may be on reasonable terms.
Rule 2 would be the mechanism, as the matter would not be proper for an expedited appeal under Rule 8A given that the appeal is based upon extensive contested expert testimony.